NEWMAN K. CHAFFEE, JR., Individually and as Coadministrator of the Estate of NEWMAN K. CHAFFEE, SR., Deceased, et al., Plaintiffs, *v.* GLENS FALLS NATIONAL BANK AND TRUST COMPANY et al., Defendants.

Supreme Court, Special Term, New York County, August 4, 1953.

*Harry H. Singleton* for Glens Falls National Bank and Trust Company, defendant.

*Louis Kaye* for Newman K. Chaffee, Jr., individually and as coadministrator, plaintiff.

*Mandeville, Buck, Teeter & Harpending* for Charlotte C. Jarvis, defendant.

GIBSON, J. The defendant bank moves to change the place of trial from New York County to Warren County on the ground that as a national banking association, having no office or place of business in New York County, it is immune from suit there by virtue of the provisions of section 94 of title 12 of the United States Code, providing as follows: " § 94. *Venue of suits.*

Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases. (R. S. § 5198; Feb. 18, 1875, ch. 80, § 1, 18 Stat. 320; Mar. 3, 1911, ch. 231, § 291, 36 Stat. 1167.) ''

The defendant Jarvis has filed a consent to the change requested. None of the remaining defendants has been served with the summons.

On the basis of the above-quoted section, the defendant bank first moved to dismiss for lack of jurisdiction and that motion was denied at Special Term in New York County, the decision of Mr. Justice HAMMER stating: '' The quoted statute does not deprive this Court of jurisdiction. The Supreme Court of the State of New York is a court of general jurisdiction, in law and equity, its jurisdiction extending to the whole state. If the statute is applicable an appropriate motion would appear to be one seeking a change to the proper County.''

The plaintiff's contention that section 94 relates only to actions for penalties on account of usury is without merit. (*Leonardi* v. *Chase Nat. Bank of City of New York*, 81 F. 2d 19, certiorari denied 298 U. S. 677.)

Passing then to its general application, section 94 appears to have been regarded as permissive and not mandatory (*Talmage* v. *Third Nat. Bank of City of New York*, 91 N. Y. 531) until the decision of *Charlotte Nat. Bank* v. *Morgan* (132 U. S. 141), in 1889. Since that time the mandatory character of the statute has been recognized in New York and actions brought here against national banking associations domiciled in other States have been dismissed (*Crofoot* v. *Giannini*, 196 Misc. 213; *Rabinowitz* v. *Kaiser-Frazier Corp.*, 198 Misc. 312). However, the precise question presented by this motion does not appear to have been passed upon in any reported decision in New York.

In certain other States it has been held that in an action brought in a court of State-wide jurisdiction against a national bank domiciled within that State, the statute in question does not require a change of venue to the county of the bank's location.

In *Cassatt* v. *First Nat. Bank of West New York* (9 N. J. Misc. Rep. 222, 224), it was held in the Supreme Court of New Jersey as then constituted, in denying the right of a national bank domiciled in that State to a change of venue: '' We are inclined to think that the direct application of the statute is to jurisdic-

tion and that it is not in such potent control of venue as to be imperative in the present case. \* \* \* The Supreme Court of this state, together with the Court of Chancery and the Prerogative Court are courts of state-wide original jurisdiction and are ' in ' every county and municipality of the state.''

In Minnesota, in affirming a like denial of change of venue from one county to another, it was held that it was '' the purpose of congress to permit suits to be brought against national banking associations as if they were organized under the state law in so far as actions over which state courts have jurisdiction are concerned, and that matters of venue within the state are to be controlled as if national banking associations were in fact citizens of the state.'' (*De Cock* v. *O'Connell,* 188 Minn. 228, 232.) It is true that in reaching this determination the Minnesota court relied largely on *Levitan* v. *Houghton Nat. Bank* (174 Mich. 566, 574), where it was said that the purpose of subdivision 16 of section 41 (now § 1348) of title 28 of the United States Code was '' to limit the jurisdiction of the United States courts and do away with the limitations of venue imposed by the earlier statutes on the State courts '' and it is doubtless true, further, that the authority of this decision may be weakened by that of the United States District Court, Southern District of New York, which held that '' No change was made '' in section 94 of title 12 by the present section 1348 of title 28. (*International Refugee Org.* v. *Bank of America Nat. Trust & Sav. Assn.,* 86 F. Supp. 884, 886.) However, the case last referred to did not involve a question of venue within the State but held that a national bank domiciled in California could not be sued in the Southern District of New York.

In New York, there is but one Supreme Court, in theory and fact (*Waldo* v. *Schmidt,* 200 N. Y. 199) and it is '' the only court of original general jurisdiction co-extensive in the arena of its exercise with that of the sovereignty which created it.'' (*Decker* v. *Canzoneri,* 256 App. Div. 68.) It seems clear that within the meaning of the statute in question it exists '' in '' every county and is not *of* any county or municipality, as are the inferior courts referred to in that statute.

The purpose of the statute was doubtless '' for the convenience '' of banking institutions '' and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts '' as was said (p. 145) in *Charlotte Nat. Bank* v. *Morgan* (*supra*). The inconvenience and the interruptions of banking business thus discussed in 1889, have today been mitigated, if

not, in fact, minimized, by present modes of rapid transportation and communication and by mechanical and electronic accounting systems and photostatic and microfilming processes, among others, and the present pre-trial practice and liberalization of the rules respecting documentary evidence have further eased the burden incident to litigation in which banks may be involved. Thus the supposed objective of the statute has been in large part attained through other means.

Further, since 1889, the activities of even the smallest banks have expanded far beyond the limits of the cities and villages in which their banking houses are located. Many of the larger banks maintain branches in two or more counties. To hold that while any bank may quite properly seek loans, trust estates and other business in all parts of the State, those with whom that business is done can sue only in the county of the bank's domicile, seems an unnecessarily harsh determination.

Under the strict construction of section 94 contended for, results verging on the chaotic might well ensue. For example, a plaintiff could not in the same action sue banks located in different counties or a bank in one county and a municipality in another except, perhaps, in an action in rem (see *Casey* v. *Adams,* 102 U. S. 66). The difficulties and uncertainties implicit in such situations would impede not only the administration of justice but the banking business as well.

It seems apparent that the more reasonable construction of the statute, in view of its purpose and intendment and in the light of present day conditions, is that which gives effect to the State-wide jurisdiction of the Supreme Court, subject to the protection which is accorded to banks, as to other litigants, by the provisions of the Civil Practice Act as to change of venue.

The motion is therefore denied. Settle order on five days' notice.