EARL T. ROBERTSON ET AL., APPELLEES, V. EARLE M. BURNETT, SR., DOING BUSINESS AS BURNETT'S HOME TRAILER SALES, ET AL., APPELLEES, IMPLEADED WITH THE MICHIGAN NATIONAL BANK, A MICHIGAN CORPORATION, APPELLANT.

109 N. W. 2d 716

Filed June 16, 1961.   No. 34924.

*Frank B. Morrison, Healey, Wilson & Barlow,* and *Patrick W. Healey,* for appellant.

*Barney, Carter & Buchholz,* for appellees Robertson et al.

*William F. Matschullat* and *Charles W. Phillips,* for appellees Burnett et al.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action brought by Earl T. Robertson and Harriett Robertson, husband and wife, plaintiffs, against Earle M. Burnett, Sr., doing business as Burnett's Home Trailer Sales; the Michigan National Bank, a Michigan corporation organized under the laws of the United States; Drive-In Realty Company, a Nebraska corporation; and Earle M. Burnett, Jr., defendants. The action

involved the purchase of a house trailer by the plaintiffs, the signing of a promissory note by them, also the giving of a conditional sales contract and a chattel mortgage by the plaintiffs. The purpose of the action was to recover judgment from the defendants, and each of them, in the amount of $563.10 with interest at 6 percent per annum; that the note, conditional sales contract, and chattel mortgage be declared void; and that the defendants be ordered to deliver to the plaintiffs a certificate of title to the house trailer free and clear of encumbrances.

The trial court found generally in favor of the plaintiffs and against the defendants, and that it had jurisdiction of the parties and the subject matter of the action. The trial court rendered judgment that the action of the plaintiffs against the defendants Drive-In Realty Company and Earle M. Burnett, Jr., and each of them, be dismissed with prejudice; that the promissory note of Earl T. Robertson and Harriett Robertson payable to the order of Burnett's Home Trailer Sales, dated January 4, 1958, in the amount of $3,378.60 be declared void and uncollectible; that the Michigan National Bank be ordered to deliver to the plaintiffs, Earl T. Robertson and Harriett Robertson, certificate of title to a Ventoura house trailer free and clear of encumbrance; and that the defendants Earle M. Burnett, Sr., and the Michigan National Bank pay to the plaintiffs Robertson the sum of $630.40 and interest thereon at the rate of 6 percent per annum, and costs of the action.

The Michigan National Bank filed a motion for new trial, reserving its objections to jurisdiction and venue, and, from the overruling thereof and the judgment, the bank has perfected this appeal.

The Michigan National Bank entered its special appearance objecting to the jurisdiction of the court over this defendant and for no other purpose for the following reasons: (1) The Michigan National Bank is organized and exists under and by virtue of laws of the

United States and not the laws of any state; (2) no lawful summons was served upon this defendant; (3) any pretended process served upon this defendant was without lawful authority; (4) this defendant is not and never has been engaged in business in the State of Nebraska; and (5) this court has no jurisdiction over the person of this defendant.

By stipulation in the record, the facts are as follows. Earl T. Robertson is 47 years of age, and Harriett Robertson is 46 years of age. They live in Lincoln, where Earl T. Robertson is employed as a laborer earning $3,400 annually. They have resided in the house trailer involved in this case in Lancaster County, Nebraska, at all times since delivery of the trailer to them.

Earle M. Burnett, Sr., does business as Burnett's Home Trailer Sales. He is a resident of Lincoln, and his principal place of business at all times involved was 318 Sharp Building, Lincoln.

The Michigan National Bank is a national banking corporation, organized and existing under and by virtue of the laws of the United States. Its principal place of business is in Grand Rapids, Michigan. It is established in the State of Michigan, and has no place of business outside of the State of Michigan.

The Drive-In Realty Company is a Nebraska corporation, and at all times involved was doing business under the trade name of Tad's Home Trailer Sales. It had its principal place of business at Tenth and Cornhusker Highway in Lincoln. Earle M. Burnett, Sr., and Earle M. Burnett, Jr., at all times involved herein were officers and stockholders of the Drive-In Realty Company. Earle M. Burnett, Jr., at all times involved, was an employee and manager of Tad's Home Trailer Sales at Tenth and Cornhusker Highway.

On November 5, 1957, Earle M. Burnett, Sr., purchased from the Ventoura Company, a corporation, a certain Ventoura mobile home. On December 7, 1957, a new certificate of title was issued in the name of Tad's Home

Trailer Sales, reciting acquisition of title from Burnett's Home Trailer Sales on November 20, 1957. This new title noted a lien in the amount of $6,000 held by State Securities Company, Lincoln, Nebraska.

In December 1957, on two occasions the Robertsons went to Tad's Home Trailer Sales lot and looked at the Ventoura trailer, among others, being shown through the lot by Earle M. Burnett, Jr., and one of his employees. The latter offered to sell the Ventoura trailer to the Robertsons. On January 4, 1958, the Robertsons returned to the lot where again the trailer was shown to them, and again it was offered for sale to them. The Robertsons do not know or remember whether or not more than one price was offered. Tad's Home Trailer Sales offered to accept property of the Robertsons in trade, at a value the amount of which the Robertsons do not remember. Earl M. Burnett, Sr., was called, and came down to assist with preparation of the closing papers. He prepared an application to purchase and other documents in connection with the transaction. The other documents included a note payable to Burnett's Home Trailer Sales at the office of the Michigan National Bank, Grand Rapids, Michigan, in the amount of $3,378.60; a conditional sales contract; and a Michigan National Bank customer's statement. Also executed by the Robertsons on the same date was the purchase statement.

The trailer was delivered to the plaintiffs on January 20, 1958, and the plaintiff Earl T. Robertson signed the statement of delivery. Plaintiffs received the Michigan National Bank payment book prior to February 20, 1958.

On February 10, 1958, title to the trailer was transferred from Tad's Home Trailer Sales to Burnett's Home Trailer Sales, and the trailer was then free of record lien. On March 28, 1958, a new title was taken out in the name of Earl Robertson or Harriett Robertson, with rights of survivorship, noting a lien of the Michigan National Bank in the amount of $3,378.60. Certificate of

title was at no time delivered to either of the Robertsons, and at time of trial was in possession of the Michigan National Bank.

The plaintiffs offered in evidence requests for admissions directed to Earle M. Burnett, Sr., and defendants' answer to the requests admitting that the figure of $728.60, which appears at line "E" of the conditional sales contract, was the product of independent computation from various sources of financial information, was independently computed, and Burnett, Sr., was unaware of whether the figure coincided with the wishes of the purchaser of the contract, the defendant Michigan National Bank; that Earle M. Burnett, Sr., could not admit or deny that the Michigan National Bank financed him in the purchase of the Ventoura trailer from the manufacturer without clarification of the sense in which the request used the term "financed"; and that some printed forms for Michigan National Bank customer's statement, note, and conditional sales contract had been furnished Earle M. Burnett, Sr., on request.

The plaintiffs offered written interrogatories submitted to the Michigan National Bank, and the answers to those interrogatories, stating that the bank had no interest in the Ventoura trailer on or prior to January 4, 1958; that the bank had never financed the house trailers marketed by Tad's Trailer Sales; that the bank, on or about April 1, 1958, acquired the Nebraska certificate of title to the Ventoura trailer, listing Earl Robertson or Harriett Robertson as owners, with rights of survivorship; that the bank had in the past engaged in financing mobile homes located in Nebraska, and the parties with whom the bank was doing business, and the date of commencement and termination was set out, including Burnett's Home Trailer Sales from July 1956 to March 1959; that the bank had never owned real property in Nebraska; that the bank held lien interests and title under its right to repossess, in certain mobile homes in the State of Nebraska, arising out of the bank's

position as an assignee of the vendor's interest in retail installment sales contracts; and that the bank had owned certain mobile homes which were in the possession of trailer sales companies under wholesale floorplan trust receipt agreements.

The plaintiffs also offered request for admissions served on defendants Earle M. Burnett, Sr., Drive-In Realty Company, and Earle M. Burnett, Jr., and the answers of those defendants thereto, admitting the execution and genuineness of the note, conditional sales contract, and statement of delivery, and stating that those defendants could neither admit nor deny the genuineness of the purported payment record or the Michigan National Bank customer's statement.

It was further established by stipulation that the Robertsons made ten payments of $56.31 each, ending November 1958, to the Michigan National Bank at Grand Rapids, Michigan; that none of the defendants were licensed pursuant to sections 45-114 to 45-158, R. R. S. 1943; and that all answers to requests for admissions and written interrogatories were true, and all documents in the record were true and correct copies.

The defendant Michigan National Bank is a national banking association organized under the laws of the United States. This defendant contends that it is not organized "under laws of any foreign government," and service of process on the Secretary of State of the State of Nebraska does not confer jurisdiction over such national bank. In this connection, the bank cites section 21-1201, R. S. Supp., 1959. This section deals with foreign corporations, and provides for service upon the Secretary of State when a foreign corporation is doing business within this state.

The defendant bank contends that service of process upon the Secretary of State is authorized only with respect to "Every foreign corporation, as hereinafter defined." The definition of a foreign corporation appears in section 21-1202, R. R. S. 1943, which reads as follows:

" 'Foreign corporations,' as the term is used in section 21-1201, shall embrace and include all corporations organized under the laws of any foreign government, of any other state than the State of Nebraska, and of any territory thereof, including the District of Columbia." The bank further asserts that, therefore, being a national banking association organized under the laws of the United States, and particularly Title 12 of the United States Code, it can be properly served under Chapter 21 of the Nebraska statutes only if the United States is a "foreign government" within the meaning of section 21-1202, R. R. S. 1943.

In 28 U. S. C. A., § 1348, p. 241, it is provided: "The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

"All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."

The last paragraph of the above statute indicates that the defendant bank is deemed a citizen of the State of Michigan and therefore it is a corporation "of any other state than the State of Nebraska," and also within the contemplation of this definition the bank is a corporation "of any foreign government."

Referring to section 21-1202, R. R. S. 1943, as stated in the plaintiff's brief, the key to the interpretation lies in the question of whether "territory *thereof*" refers back to "state" or to "foreign government." As states of the United States do not have territories, the reference must be to "foreign government." As one of the

territories is the District of Columbia and as the District of Columbia is a "territory" of the United States, it necessarily follows as used in section 21-1202, R. R. S. 1943, that foreign government includes the United States. From the foregoing, it is apparent that the bank is a foreign corporation within the contemplation of section 21-1202, R. R. S. 1943, and under the facts adduced was doing business in this state.

We conclude that the defendant bank's assignment of error is without merit.

The defendant bank contends that the proper venue of an action or proceeding against a national banking association organized under the laws of the United States is in the district, county, or city where the bank is located, citing 12 U. S. C. A., § 94, p. 442.

In 12 U. S. C. A., § 94, p. 442, it is provided: "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

The defendant bank cites numerous cases relating to venue which have been considered. However, we believe the following to be applicable to the instant case.

In DeCock v. O'Connell, 188 Minn. 228, 246 N. W. 885, 86 A. L. R. 41, the court held: "A national bank may be sued in any county where the venue would properly lie if such bank were a state institution." The court said further: "* * * we believe that it was the purpose of Congress to permit suits to be brought against national banking associations as if they were organized under the state law in so far as actions over which state courts have jurisdiction are concerned, and that matters of venue within the state are to be controlled as if national banking associations were in fact citizens of the state." See, also, Levitan v. Houghton Nat. Bank, 174 Mich. 566, 140 N. W. 1019.

As stated in 7 Am. Jur., Banks, § 820, p. 591: "The National Bank Act provides that actions and proceedings against any association under that act may be had in any Circuit, District or Territorial Court of the United States, held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases. A majority of the state courts have held that these provisions do not deprive the state courts of jurisdiction of an action against a national bank located and doing business in another state, or in a county or city other than that in which the action is brought. The view has also been taken that the foregoing provision of the National Bank Act relates to transitory actions only, and not to such actions as are by law local in their character, and national banks are not exempted from the ordinary rules of law affecting the locality of actions founded on local things." See, also, Casey v. Adams, 102 U. S. 66, 26 L. Ed. 52; Annotation, 86 A. L. R. 47. This court follows the majority rule as hereinbefore set forth.

The instant action was a local action, not a transitory action. See, § 25-404, R. R. S. 1943; § 45-154, R. R. S. 1943.

The trial court found that it had jurisdiction of the person and the subject matter of the action, and it could only do so if the bank were doing business in this state, and the evidence clearly shows that the bank was doing business in this state.

We conclude that the jurisdiction and venue lie properly in the court where the cause was tried.

The bank next contends that the penalty applicable to a national bank for taking, receiving, reserving, or charging an excessive rate of interest is as provided for in 12 U. S. C. A., § 86, p. 319. This section is as follows: "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of

the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: * * *."

In the instant case the parties agreed that the law of Nebraska should apply. The conditional sales contract provides: "9. It is the intention of the parties hereto that all matters relating to the execution, interpretation, validity and performance of this contract shall be governed by the laws of the state in which the Buyer now resides, which is the state indicated below. * * * Residence of Buyer * * * Omaha, Nebraska." It is apparent from the instrument above mentioned that the defendant is bound by its contract. Consequently, all matters relating to the execution, interpretation, validity, and performance of the contract are governed by the laws of this state. Section 45-154, R. R. S. 1943, applies, and not 12 U. S. C. A., § 86, p. 319.

The question arises whether the transaction here involved is a loan or a time sale. If it is a loan, the entire indebtedness is void and uncollectible even though the lender is not licensed pursuant to the provisions of sections 45-114 to 45-158, R. R. S. 1943.

As stated in State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215: "The permissive provisions of sections 45-114 to 45-158, R. R. S. 1943, apply to licensees, but every inhibitory provision contained therein applies alike to licensees and nonlicensees and the officers and employees of either or both, and the violation thereof by such persons in connection with any indebtedness, however acquired by them, renders such entire indebtedness void and uncollectible."

The application to purchase the mobile home is in substance as follows: Description of coach, Name Ven-

tura; price $6,895; total purchase price to be paid by purchaser and to be received by seller $6,895; down payment $4,637.50; cash on delivery, nil; balance to be financed $2,257.50. This is the only document showing the sale by Tad's Home Trailer Sales to the plaintiffs.

In Robb v. Central Credit Corp., 169 Neb. 505, 100 N. W. 2d 57, this court said: "It is not a time sale if a car dealer, in selling a car, actually agrees with the buyer that he will finance the balance of the cash purchase price agreed upon, and does so, even though at the time he informs the buyer of the amount he will be required to pay and the terms thereof. Such a transaction would be a loan to finance the balance of the cash purchase price and, if payable in installments, must meet the requirements of the statutes relating thereto. And the fact that the buyer knew the terms and provisions of such loan at the time it was made and voluntarily entered into it would not have the effect of waiving the illegality of any provision thereof, if such provision was actually in violation of any of the inhibitory provisions of the installment loan statute. See State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55."

"The installment loan statutes include all persons or parties violating any of the inhibitory provisions thereof whether they be licensees or nonlicensees." State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. See, also, Curtis v. Securities Acceptance Corp., 166 Neb. 815, 91 N. W. 2d 19.

Where this document evidences an intent to make a loan, the note establishes that the loan was made, as does the conditional sales contract. The benefits of these documents ran to Burnett's Home Trailer Sales, not to Tad's Home Trailer Sales.

The conditional sales contract contained the following: "Statement of Transaction

A   Cash Selling Price (Including
      Taxes, etc.)                           $6,895.00

| B | Insurance | $ 392.50 | $7,287.50 |
|---|---|---|---|
| C | Down Payment: | | |
|   | Cash | $ .20 | |
|   | Trade-in Allowance | $4,637.30 | $4,637.50 |
| D | Unpaid Balance of Purchase Price | | $2,650.00 |
| E | Finance Charge | | $ 728.60 |
| F | Deferred Balance | | $3,378.60" |

Plaintiffs were to pay the deferred balance of $3,378.60 in 60 equal monthly installments of $56.31.

The loan involved in the instant case violates the Nebraska Installment Loan Act.

Section 45-138, subsection (3), R. R. S. 1943, provides in part: "No licensee shall enter into any contract of loan, referred to in subsection (1) or (2) of this section, under sections 45-114 to 45-155, under which the borrower agrees to make any payment of principal more than thirty-six calendar months from the date of making such contract, referred to in subsection (1) or (2) of this section, if such contract is not secured by a bona fide duly recorded mortgage on real estate owned by the borrower, * * *. Any contract of loan made in violation of this section, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges on such loan."

In A-1 Finance Co., Inc. v. Nelson, 165 Neb. 296, 85 N. W. 2d 687, this court said: "A loan made by a licensee under the installment loan law which is not secured by a real estate mortgage and is not due or payable within the period of 21 months as provided for in section 45-138, R. R. S. 1943, is violative of said section and void." This case was decided under the prior act. As will be obvious, the present act provides for 36 months instead of 21 months. See, also, State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

Section 45-137, R. R. S. 1943, provides for the maxi-

mum amounts of interest rates to be charged on loans under the Installment Loan Act, and the charge of $728.60 exceeds the maximum legal amount which can be charged under such section of the statutes. This loan is rendered void by section 45-155, R. R. S. 1943, which provides: "Violation of sections 45-114 to 45-155 in connection with any indebtedness, however acquired, shall render such indebtedness void and uncollectible." This court so held in State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55, and State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

We conclude that this loan was void from its inception, and the assignment of Burnett's Home Trailer Sales to a third party such as the Michigan National Bank does not breathe life back into the void instrument. We further conclude that the judgment rendered by the trial court should be affirmed.

For the reasons given herein, the judgment of the trial court is affirmed.

AFFIRMED.