[Civ. No. 30069. First Dist., Div. One. Jan. 24, 1972.]

MICHIGAN NATIONAL BANK, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
LARRY H. KELL, Real Party in Interest.

## COUNSEL

Joseph W. Jay, Jr., for Petitioner.

No appearance for Respondent.

Harry J. Lohstroh for Real Party in Interest.

## OPINION

SIMS, J.—By its petition for writ of mandate, Michigan National Bank, a national banking association organized and existing under the laws of the United States of America (12 U.S.C.A. § 21 et seq.), seeks review of an order which denied its motion to quash service of summons (see Code Civ. Proc., § 418.10) which was purportedly effected through service on the Secretary of State in California (see Corp. Code, §§ 6500-6504). Following the grant of an alternative writ, the parties filed further briefs in support of their respective positions. On a consideration of the record it is determined that the trial court properly denied petitioner's motion to quash the service of summons. The petition for a peremptory writ of mandate must be denied, and the alternative writ heretofore issued should be discharged.

Petitioner's motion was made on the grounds that the court lacked jurisdiction over it because it was a federally chartered national banking association, located and with its principal office and place of business in Grand Rapids, State of Michigan, and could only be sued at that place under the provisions of section 94 of title 12 of the United States Code.[1] It is concluded that in refinancing the purchase of personal property within this state the petitioner became subject to the jurisdiction of the courts of this state with respect to any such transaction, within the provisions of Code of Civil Procedure section 410.10 which provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the

---

[1]Section 94 of title 12, United States Code (Rev. Stat. § 5198; Feb. 18, 1875, ch. 80, § 1, 18 Stat. 320; March 3, 1911, ch. 231, § 291, 36 Stat. 1167) provides as follows: "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

For historical background of the statute and related provisions see *Mercantile Nat. Bank* v. *Langdeau* (1963) 371 U.S. 555, 558-561 [9 L.Ed.2d 523, 526-528, 83 S.Ct. 520]; *Bruns, Nordeman & Co.* v. *American National Bank & Trust Co.* (2d Cir. 1968) 394 F.2d 300, 303 [10 A.L.R. Fed. 932]; and *Raiola* v. *Los Angeles First Nat. Trust & S. Bank* (1929) 133 Misc. 630, 631-636 [233 N.Y.S. 301, 302-305].

Constitution of this state or of the United States"; and that any privilege it may have under the laws of the United States to be sued elsewhere was waived as to such transaction.

## I

On November 25, 1967 real party in interest purchased a 1947 used Beech Aircraft from A.S.L. for the sum of $5,118, of which sum $1,018 was paid, and $4,100 was financed for a total time balance of $5,526 to be paid in 60 monthly installments of $92.10. The time balance was represented by a note on a printed form payable to A.S.L. [inserted], as "(dealer)" "at the office of Michigan National Bank (Grand Rapids, Michigan)." The note was endorsed on a printed form, "Pay to the order of Michigan National Bank, Grand Rapids, Michigan. Without Recourse" by A.S.L. [inserted] as "Seller." It was secured by a form chattel mortgage which referred to the buyer as "Mortgagor" and the seller as "Mortgagee." Inserted in the form was a description of the aircraft, a statement of the transaction (cash sales price, etc.). It contained a stipulation, "4. That said aircraft will be based at CONCORD, CALIF. [inserted] and will not be removed from the continental United States, or the base indicated for a period of thirty (30) days, without written consent of Mortgagee; Mortgagee shall have the right to inspect said aircraft periodically at its discretion." It further recited, "11. Mortgagor acknowledges the intended assignment of this mortgage and agrees that the holder shall have all the rights of the Mortgagee herein, and Mortgagor agrees not to set up any claim, defense or counterclaim against the holder, limiting himself in remedy to an action against the original Mortgagee."

The chattel mortgage was executed by A.S.L., as mortgagee, and by real party in interest, as mortgagor, on November 25, 1967. An acknowledgment of each signature is dated the following day. On the latter day A.S.L. as "Dealer-Seller" signed and acknowledged an assignment form on the printed chattel mortgage which recites in part, "For value received, the undersigned hereby sells and assigns to Michigan National Bank, its successors and assigns, all his [its] right, title and interest in and to the within chattel mortgage. . . ."

According to the petitioner, the principal action is one for damages for the alleged taking and conversion of personal property.[2] The complaint

---

[2]The trial court had the pleadings before it at the time of considering the petitioner's motion. Therefore this court, on its own motion, pursuant to rule 12(a) of California Rules of Court, has augmented the record by ordering that the original papers, records and exhibits on file with the superior court at the time of petitioner's motion was considered be transmitted to it and be deemed a part of the record in these proceedings.

The complaint alleges that on June 25, 1970, the plaintiff (real party in interest

was filed on November 24, 1970; summons was issued on March 22, 1971; service was purportedly made on petitioner by service on the Secretary of State on May 29, 1971; and on June 4, 1971, petitioner filed its notice of motion to quash the service of summons, which motion was denied July 2, 1971. The petition under review was then filed. The motion and petition are supported by the declaration of a vice president of petitioner from which it appears that petitioner is a corporation and national banking association chartered, organized and existing under the laws of the United States of America with authorized offices, as a result of consolidations, in six cities, including Grand Rapids, within the State of Michigan, and no principal or other office and place of business outside of the State of Michigan. He expressly denied the bank had any office in the State of California.

## II

■ The general question of jurisdiction over the petitioner as a foreign

here) was the owner of an aircraft of the reasonable value of $7,000, in which he had an equity of $4,070.80, and that on that date the bank and other defendants unlawfully took and carried away the airplane and converted and disposed of it to their own use. Plaintiff seeks recovery of the value of his equity, loss of use at $350 per month, punitive damages in the sum of $10,000, and attorney's fees and costs.

Petitioner's motion to quash was set for hearing on July 2, 1971. On June 18, 1971, the plaintiff filed his memorandum of points and authorities in opposition to the petitioner's motion. This document reveals the facts and documents pertaining to the original sale and the financing of the purchase of the airplane. It is not verified under oath or by declaration as provided by law. A copy was mailed to the attorney for petitioner on June 17, 1971. On June 29, 1971, petitioner filed the affidavit of its vice-president, and its points and authorities in support of its motion. No attempt was made to controvert the allegations concerning the petitioner's participation in the financing of the airplane. It is, therefore, assumed that the trial court considered these documents. They were also attached to the points and authorities submitted in opposition to the petition filed with this court. On this review petitioner asserts, "It is respectfully submitted that the fashion in which the supposed waiver has been raised is improper and inadequate, but more importantly, that there is nothing to support even the remotest suggestion that there has been a deliberate relinquishment of defendant's right much less 'clear and convincing evidence' as required by the cases." It must be assumed that if objection had been made in the lower court to the form in which these facts were presented, it could have been readily corrected. The documents are not something that could be easily fabricated. If so fabricated their existence and negotiation to petitioner could have been denied. In support of the order of the lower court they are considered part of the record in these proceedings. (See *Fuller* v. *Goodyear Tire & Rubber Co.* (1970) 7 Cal.App.3d 690, 693 [86 Cal.Rptr. 705]; *Waller* v. *Waller* (1970) 3 Cal.App.3d 456, 465 [83 Cal.Rptr. 533]; *People* v. *United Bonding Ins. Co.* (1966) 240 Cal.App.2d 895, 896, fn. 2 [50 Cal.Rptr. 198]; *Frantz* v. *Inter-Insurance Exchange* (1964) 229 Cal.App.2d 269, 277 [40 Cal.Rptr. 218]. Cf. *Truslow* v. *Woodruff* (1967) 252 Cal.App. 2d 158, 163-164 [60 Cal.Rptr. 304]. Note, *Estate of Wilson* (1953) 116 Cal.App.2d 523, 526 [253 P.2d 1011]; *Estate of Da Roza* (1947) 82 Cal.App.2d 550, 555-556 [186 P.2d 725]; and *People* v. *Duffy* (1930) 110 Cal.App. 631, 635-636 [294 P. 496].)

corporation, irrespective of the provisions of section 94, may first be examined. Section 410.10 of the Code of Civil Procedure, quoted above, manifests an intent to exercise the broadest possible jurisdiction. The constitutional perimeters of this jurisdiction are found in the decisions of the United States Supreme Court. (See *Hanson* v. *Dènckla* (1958) 357 U.S. 235, 245-254 [2 L.Ed.2d 1283, 1292-1298, 78 S.Ct. 1228]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 222-224 [2 L.Ed.2d 223, 225-227, 78 S.Ct. 199]; and *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-320 [90 L.Ed. 95, 101-104, 66 S.Ct. 154, 161 A.L.R. 1057]; and *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-900 [80 Cal.Rptr. 113, 458 P.2d 57].) This court has already ruled that the financing of the purchase and sales of airplanes within this state is an activity which may subject the financing institution to the jurisdiction of the courts of this state with respect to disputes connected with such transactions. (See *Pope* v. *National Aero Finance Co.* (1963) 220 Cal.App.2d 709, 719 [33 Cal.Rptr. 889].) *McGee* v. *International Life Ins. Co., supra,* makes it clear that jurisdiction may attend an isolated transaction. There the court noted, ". . . so far as the record before us shows, respondent has never solicited or done any insurance business in California apart from the policy involved here." (355 U.S. at p. 222 [2 L.Ed.2d at p. 225].) Nevertheless, the court ruled, "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. [Citations.]" (*Id.,* at p. 223 [2 L.Ed.2d at p. 226].) ▮ Here the contract was delivered in California, the petitioner undertook the dealer-seller's obligations under the chattel mortgage, the payments such as were made were to be remitted from California, and upon performance, or excuse from performing, the real party in interest was entitled to receive clear title to the airplane in this state. He is in a position analogous to Mr. McGee's beneficiary in the life insurance company case.[3]

The question remains whether section 94 precludes the exercise of this jurisdiction by the respondent court.

### III

In the earliest cases construing the provisions now found in section 94, the exercise of state jurisdiction was upheld. In *Casey* v. *Adams* (1880)

---

[3]In *Kraemer* v. *Coward* (1934) 2 Cal.App.2d 506 [38 P.2d 458], the court held that a Michigan financial institution which took an assignment of a note and deed of trust payable to a local "trustee" was not doing business in the state. The issue arose in another context, and, in any event, the case is deprived of value as a precedent by the adoption of section 410.10 of the Code of Civil Procedure which necessitates a reappraisal of what constitutes "doing business" for the purposes of jurisdiction.

102 U.S. 66 [26 L.Ed. 52] the court held that the receiver of a national banking association, who asserted a claim to the proceeds which had been realized from the sale of land on foreclosure of a mortgage, was subject to suit in the state judicial district in which the land was situated because the action was local not transitory.

Subsequently in *First National Bank of Charlotte* v. *Morgan* (1889) 132 U.S. 141 [33 L.Ed. 282], the court upheld a judgment allowing recovery for the exaction of usurious interest as against the contention that the action had not been brought in the county or city in which the national banking association was located. The court noted, "This exemption of national banking associations from suits in state courts, established elsewhere than in the county or city in which such associations were located, was, we do not doubt, prescribed for the convenience of those institutions, and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts. [Citations.]" (132 U.S. at p. 145 [33 L.Ed. at p. 284].) It concluded, "Considering the object as well as the words of the statute authorizing suit against a national banking association to be brought in the proper state court of the county where it is located, we are of opinion that its exemption from suits in other courts of the same State was a personal privilege that it could waive, and which, in this case, the defendant did waive, by appearing and making defence without claiming the immunity granted by Congress." (*Id.*)

In *Mercantile Nat. Bank* v. *Langdeau* (1963) 371 U.S. 555 [9 L.Ed.2d 523, 83 S.Ct. 520] the court, over the dissent of one associate justice, entertained an appeal from an order of a state court which had refused to transfer an action, which alleged a conspiracy to defraud an insurance company, to the county in which the defendant and appellant national banking association was located. In answer to the contention that the provisions of section 94 were permissive only, and not mandatory, five members of the court, two justices dissenting, joined in asserting, "All of the cases in this Court which have touched upon the issue here are in accord with our conclusion that national banks may be sued only in those state courts in the county where the banks are located." (371 U.S. at p. 561, fn. omitted [9 L.Ed.2d at p. 528].) The opinion rejected the argument that under such a construction "a litigant will be unable to join two national banks in the same action in the state courts if they are located in different counties or in the federal courts if they are located in different districts" as a question not presented in the cases before it, and as, in any event, a matter for consideration by Congress (*id.*, p. 563 [9 L.Ed.2d at p. 529]). The decision also overruled the contention that

the statute had been repealed by subsequent legislation adopted in 1882 (*id.,* at pp. 565-567 [9 L.Ed.2d at pp. 530-531]).

Finally in *Michigan Nat. Bank* v. *Robertson* (1963) 372 U.S. 591 [9 L.Ed.2d 961, 83 S.Ct. 914], decided nine weeks later, the court, in a per curiam opinion in which two justices concurred only in the result, reversed two decisions of the Supreme Court of Nebraska which had permitted recovery under the Nebraska usury law against a national bank located in Michigan. Notes and lien instruments for the unpaid balance of the purchase price of house trailers had been executed by the plaintiffs and respondents and delivered to the local dealer, who in turn negotiated them to the Michigan bank. The court found that the action "for the recovery of a fine, forfeiture, or penalty imposed by statute," was transitory not local and so not within the principle enunciated in *Casey* v. *Adams, supra,* 102 U.S. 66 (372 U.S. at pp. 593-594 [9 L.Ed.2d at pp. 963-964]). It was contended that the bank had waived the benefit of section 94 because the documents in question provided that all matters relating to their execution, interpretation, validity and performance were to be determined by the law of the State of Nebraska. The court refused to pass on the matter because the state court had not yet ruled on that issue, and the cases were remanded for further proceedings (*id.,* p. 594).[4]

On remand the Supreme Court of Nebraska determined that the provisions of the contract, on which the buyer relied as showing a waiver of the privilege conferred by section 94, were not intended to relate to venue. The judgment was reversed as to the national bank with directions to dismiss the action. (*Hills* v. *Burnett* (1963) 175 Neb. 871, 872-873 [125 N.W.2d 66, 67-68]. See also *Bair* v. *Michigan National Bank* (1963) 175 Neb. 875, 876-877 [124 N.W.2d 926, 927].)

An examination of the decisions which were overruled by the United States Supreme Court reflects that the following facts were brought out

---

[4]In a dissent authored by Mr. Justice Black, in which Mr. Justice Douglas concurred, the argument against the strict construction of the venue statute is stated as follows: "Each lawsuit grew out of a business transaction in which the Michigan bank financed a Nebraska resident's purchase of a house trailer from a Nebraska dealer. Now, under this Court's holding, these people in Nebraska who allege that their contracts were usurious under Nebraska law must, unless the bank be held to have waived statutory venue, go all the way to Michigan to try to vindicate their rights against the bank." (372 U.S. at p. 595 [9 L.Ed.2d at p. 964]. See also *United States National Bank* v. *Hill* (9th Cir. 1970) 434 F.2d 1019, 1020; *Bruns, Nordeman & Co.* v. *American National Bank & Trust Co.* (2d Cir. 1968) 394 F.2d 300, 302-303 and 304 [10 A.L.R. Fed. 932]; *Frankford Supply Co.* v. *Matteo* (E.D.Pa. 1969) 305 F.Supp. 794, 795; *Lapinsohn* v. *Lewis Charles, Inc.* (1968) 212 Pa.Super. 185 [240 A.2d 90, 92-95]; *Chaffee* v. *Glens Falls Nat. Bank & Trust Co.* (1953) 204 Misc. 181, 183-184 [123 N.Y.S.2d 635, 638]; and Note, *An Assault on the Venue Sanctuary of National Banks* (1965) 34 Geo.Wash.L.Rev. 765, *passim.*)

at the trial of the actions: the documents executed in connection with the purchasers' application to purchase included a note to the vendor payable, as in this case, at the office of the national bank in Michigan, a conditional sales contract (here a chattel mortgage), a customer's statement on the bank's form, and a purchase statement. Printed forms for the bank's customer statement, note, and conditional sales contract had been furnished an officer of the vendor on request. The note and contract were purchased by the bank. It issued a payment book to the purchasers. A certificate of title was ultimately obtained showing title in the purchasers, subject to the bank's lien. This certificate was held by the bank. The bank acknowledged that it had been engaged in financing mobile homes located in Nebraska, and set forth the parties with whom it had been doing business, including the vendor in that case for a period of almost three years. It admitted "that the bank held lien interests and title under its right to repossess, in certain mobile homes in the State of Nebraska, arising out of the bank's position as an assignee of the vendor's interest in retail installment sales contracts; and that the bank had owned certain mobile homes which were in the possession of trailer sales companies under wholesale floorplan trust receipt agreements." (See *Robertson* v. *Burnett* (1961) 172 Neb. 385, at pp. 390-391 [109 N.W.2d 716, at pp. 719-720]; and *Hills* v. *Burnett* (1961) 172 Neb. 370, at pp. 379-382 [109 N.W.2d 739, at pp. 745-746].) The court concluded that the bank was doing business in Nebraska so as to be amenable to suit commenced by substituted service (see *Robertson* v. *Burnett, supra,* 172 Neb. 385, 394 [109 N.W.2d 716, 721-722]; and *Hills* v. *Burnett, supra,* 172 Neb. 370, 372-376 [109 N.W.2d 739, 741-743]). This conclusion was not subsequently overturned, although it was rendered nugatory by the interposition of the policy embodied in section 94 as construed by the United States Supreme Court. Unfortunately the foregoing facts were not reviewed on the issue of waiver when the cases were remanded.

In this state, despite an early interpretation that the statute (12 U.S.C.A. § 94; Rev. Stat. § 5198) did not deprive the court of jurisdiction (*Fresno National Bank* v. *Superior Court* (1890) 83 Cal. 491, 498-500 [24 P. 157]), the courts have recognized that the provisions are mandatory and require quashing of the service of summons if the national bank is located outside of the state (*Ebeling* v. *Continental Illinois Nat. Bank & Trust Co.* (1969) 272 Cal.App.2d 724, 726-727 [77 Cal.Rptr. 612]), or a change of venue if the national bank is located in a county within the state other than that in which the action was commenced. (*Monarch Wine Co.* v. *Butte* (1952) 113 Cal.App.2d 833, 839 [249 P.2d 291]. See also *Fresno National Bank* v. *Superior Court,*

*supra,* 83 Cal. 491, 501; and *United States National Bank* v. *Hill* (9th Cir. 1970) 434 F.2d 1019, 1021.)

The applicable rules were summarized in *Ebeling,* as follows: "A national bank for jurisdictional purposes is a citizen of the state wherein it is established or located [citation] and can only be sued in a state court in the county in which it is located. A national banking association is 'established' or 'located,' as those terms are used in section 94, only at the national banking association's principal place of business as set forth in its charter. [Citations.]

"The venue requirements, with reference to suits against a national bank, as set forth in section 94 are mandatory. [Citations.]" (272 Cal. App.2d at pp. 726-727.)

■ Real party in interest, the plaintiff below, asserts that the national bank waived the privilege conferred by section 94 because it conducted business in California. He points out that if the bank had appointed an agent for the service of process in California, it could not subsequently assert a right to be sued elsewhere. (See *Neirbo Co.* v. *Bethlehem Corp.* (1939) 308 U.S. 165, 175 [84 L.Ed. 167, 174, 60 S.Ct. 153, 128 A.L.R. 1437], construing the venue provisions of 28 U.S.C.A. § 112. See also *Davis* v. *Smith* (3d Cir. 1958) 253 F.2d 286, 288-289, construing 28 U.S.C.A. § 1391(a), and same case below (E.D.Pa. 1954) 126 F.Supp. 497, 499-502. Cf. *Buffum* v. *Chase Nat. Bank of City of New York* (7th Cir. 1951) 192 F.2d 58, 61 [cert. den. (1952) 342 U.S. 944 [96 L.Ed. 702, 72 S.Ct. 558]], where consent deemed limited.) It is asserted that the bank by doing business in California voluntarily consented to the designation of the Secretary of State as an agent for the service of process and thereby waived the privilege conferred by section 94. (See Corp. Code, § 6501.) In the foregoing cases, however, there was an actual designation of an agent by the waiving party. In *Davis* v. *Smith, supra,* the district judge pointed out, "The appointment of an agent for acceptance of service of process *by operation of a state statute solely,* without an affirmative 'act' on the part of the defendant in appointing the agent, may not of and in itself constitute a waiver of venue, i.e., a binding indication of the defendant's willingness to be sued in that state." (126 F.Supp. at p. 500, italics in opinion.) The plaintiff, therefore, can find little support from *Neirbo* or *Davis.*

Other cases on which plaintiff relies as demonstrating waiver of the requirement of section 94 are predicated upon facts which transcend those presented in this case.[5] In this case there is no showing that peti-

[5]In *Lapinsohn* v. *Lewis Charles, Inc.* (1968) 212 Pa.Super. 185 [240 A.2d 90] the national bank which sought relief was located in Camden, New Jersey, and

tioner has a branch office in California, that it accepted appointment to act under authority of the courts of this state, that it utilized the courts of this state to enforce the obligation in question, or that it undertook to perform any obligations, jointly or severally, within this state.

■ The foregoing precedents indicate that if the national bank seeks to use a state court, other than in the county or city in which it is located, to enforce obligations which are due it, it may be subject to countersuit for matters arising out of that transaction. This suggests that when self-help is used for the same purpose, claims arising out of the assertion of the bank's rights should be heard where they occur. Nevertheless in *Ebeling* v. *Continental Illinois Nat. Bank & Trust Co., supra*, which was characterized by the court as an action "to recover certain personal property and damages for its taking" (272 Cal.App.2d at p. 727), the order quashing the service of summons was upheld. (*Id.* See also *Holst* v. *Bank of America National Trust & Sav. Assn.* (1971) 250 Ark. 815, 818 [467 S.W.2d 397, 398].)

In *Insurance Co. of N. A.* v. *Allied Crude Veg. Oil R. Corp.* (1965)

---

had been subjected to an attachment against one of its customers levied at a Philadelphia, Pennsylvania branch of the bank. The court reversed the trial court's order dismissing the bank, and reinstated the attachment. It concluded, "If a national bank avails itself of a jurisdiction by setting up a branch to conduct general banking business, it has manifested an intent to be found in that jurisdiction for purposes of suits arising out of any business conducted there. It is to be remembered that the original purpose of the venue restrictions was to limit suits where most of the records were kept and business conducted. But, if a branch can be established to conduct business, there is no logical reason to rigidly apply a statute when doing so actually subverts its purpose." (212 Pa.Super. at pp. 192-193 [240 A.2d at pp. 94-95]. See also *Frankford Supply Co.* v. *Matteo* (E.D.Pa. 1969) 305 F.Supp. 794, 796; *Contra, United States National Bank* v. *Hill* (9th Cir. 1970) 434 F.2d 1019, 1020; and *Leonardi* v. *Chase Nat. Bank of City of New York* (2d Cir. 1936) 81 F.2d 19, 22; and see *Raiola* v. *Los Angeles First Nat. Trust & S. Bank* (1929) 133 Misc. 630, 635-636 [233 N.Y.S. 301, 305-308].)

In *Lichtenfels* v. *North Carolina National Bank* (1963) 260 N.C. 146, 150-151 [132 S.E.2d 360, 363, 1 A.L.R.3d 897, 903] a national bank which had accepted appointment as a testamentary trustee was held accountable in the forum where the will was probated.

In *County of Okeechobee* v. *Florida Nat. Bank* (1933) 112 Fla. 309, 314 [150 So. 124, 126], the court reversed an order dismissing the national bank because it found that the bank waived the venue privilege by jointly contracting with a local bank to perform a contract with the local county commissioners. (Cf. *The Exchange National Bank of Chicago* v. *Arne Rock and Grand Turk Line, Ltd.* (Fla. App. 1967) 197 So.2d 52, 53.)

In *Continental Nat. Bank* v. *Folsom* (1887) 78 Ga. 449, 456-458 [3 S.E. 269, 273-274] a national bank which had filed an attachment bond in an action to recover from the surety on an unpaid promissory note was held amenable to suit on the bond in the forum where the bond was posted.

See also Note, *An Assault on the Venue Sanctuary of National Banks* (1965) 34 Geo.Wash.L.Rev. 765; and Annotation 1 A.L.R.3d 904.

■■■■■■■■■■■■■■■

89 N.J. Super. 518 [215 A.2d 579] it was contended that three national banks, located in other states, had waived the provisions of section 94 by making loans and taking warehouse receipts on commodities stored, insured and destroyed by insured risks in New Jersey. Despite the fact that the action was one to rescind the basic insurance because of the alleged fraud, misrepresentation and breach of warranty of the owner-borrower, the court noted, "that none of the transactions by which [the banks] acquired the warehouse receipts and insurance endorsements in question was consummated within this State." It concluded: "It is apparent on the statement of the factual contentions that no intentional relinquishment may be found to have been made by the banks either directly or by implication. I am satisfied that there has been no waiver. [Citations.]" (89 N.J. Super. at p. 527 [215 A.2d at p. 587]. See also *Stephen-Leedom Carpet Co.* v. *Republic Nat. Bank* (1966) 25 App.Div.2d 645 [268 N.Y.S.2d 377, 378].)

In *Sulil Realty Corp.* v. *Rye Motors, Inc.* (1965) 45 Misc.2d 458 [257 N.Y.S.2d 111] the plaintiff sought to hold a national bank located in Connecticut in contempt because it had sold and disposed of property of the judgment-debtor in a New York action in disregard of a restraining notice and had failed to reply to information subpoenas, both served on it by mail. This court rejected plaintiff's claim that the bank was subject to the jurisdiction of the New York court, and had waived the provisions of section 94, "first, by conducting a substantial business in this County and elsewhere in this state in connection with the financing of motor vehicles purchased by residents of New York; and second, by invoking the jurisdiction of this court in three actions (which are not shown to be related to the actions here involved)." (45 Misc.2d at p. 461 [257 N.Y.S.2d at pp. 115-116].) On appeal, however, the order denying relief was affirmed solely on the ground that title to the property was in the bank and not in the judgment-debtor at the time the restraining order was served. (47 Misc.2d 715 [262 N.Y.S.2d 989].)

None of the foregoing precedents appear to decisively dispose of the contention raised by the plaintiff below. The question of waiver has not been considered in this state. In *Ebeling* v. *Continental Illinois Nat. Bank & Trust Co., supra,* the court stated, "It does not appear, and it is not urged that defendant bank has waived the venue privilege as to this action. [Citation.]" (272 Cal.App.2d at p. 728.) In *Monarch Wine Co.* v. *Butte, supra,* there was no suggestion that the national bank located in Los Angeles County had waived its right under section 94 to have the venue changed from San Francisco County.

A review of *Michigan Nat. Bank* v. *Robertson, supra,* and the related Nebraska cases preceding and following that decision, reveals that the

Supreme Court of the United States did not consider that the facts developed eliminated waiver as a matter of law. If so, there would have been little point in remanding the case to the state court for further proceedings. Can it be assumed conversely that a finding of waiver would have been sustained? There is no controlling precedent to the contrary. ▮ The criticism of the limitations on the right to sue a national bank (see fn. 4 above), the trend of the decisions with regard to court jurisdiction over branch banks, and jurisdiction over foreign corporations and persons generally (see Part II above), the absence of compelling authority to the contrary, and the invitation in *Robertson* that the state courts may determine the question of waiver, all lead to the conclusion that each case should be evaluated on its facts.

▮ In this case it is concluded that the Michigan bank, by soliciting with its forms the refinancing of sales of airplanes, sold and to be harbored in this state, is not only doing business in this state so as to be subject to the jurisdiction of the courts of this state in disputes involving such transactions, but also has waived the requirements of section 94 insofar as such suits are concerned. Here it is alleged that the purchaser-plaintiff was wronged by the bank's action in enforcing its security interest in an airplane purchased in this state, and financed on forms which indicated that petitioner would be the real party in interest in the payment of the balance of the purchase price. It was contemplated that the plane would be based in the county where the action below was commenced, and it is alleged that the purchaser has wrongfully been deprived of his interest in the airplane by a seizure there. Under these circumstances, the bank, if not by the original financing, at least by the combination of that financing and its alleged actions in attempting to enforce its security interest in this state has waived its privilege to insist on being sued in Michigan.

The alternative writ of mandamus is discharged and the application for a peremptory writ is denied.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied February 23, 1972, and the opinion was modified to read as printed above.