[Civ. No. 18167. Fourth Dist., Div. One. June 2, 1978.]

CENTRAL BANK, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DARRYL L. BRYANT, Real Party in Interest.

594

**COUNSEL**

C. Robert Mackay and Roy C. Zukerman for Petitioner.

No appearance for Respondent.

William M. Shernoff and Harvey R. Levine for Real Party in Interest.

**OPINION**

**BROWN (Gerald), P. J.**—Central Bank, National Association (Central Bank), a chartered national banking association, seeks a writ of mandate directing the superior court to grant its motion for change of venue (Code Civ. Proc., § 400).

The central issue is whether petitioner has impliedly waived its federal statutory right to be sued only in a county in which it is located (12 U.S.C. § 94).

In the underlying civil action, real party in interest, Darryl L. Bryant, is suing American Reserve Insurance Company (American); Coast Program, a division of Central Bank; Karen Laseter, dba Laseter Insurance Agency; and doe defendants, seeking compensatory and punitive damages for (1) breach of duty of fair dealing and good faith, (2) breach of fiduciary duties, (3) fraud, and (4) breach of statutory duties.

The unverified complaint alleges Laseter and American issued an automobile insurance policy to cover Bryant, and Bryant and Central Bank entered into an insurance premium financing agreement under which Central Bank would pay American's annual premium and Bryant

would pay monthly loan installments to Central Bank. Bryant alleges he has made all "loan installments due under the loan agreement to [Central Bank] through its agent, defendant Laseter." The complaint is silent as to where the premium financing agreement was entered into.

Central Bank moved for change of venue based upon 12 United States Code section 94, which provides: "Actions and proceedings against [national banking associations] may be had in any district or Territorial court of the United States held within the district in which such association may be established, or *in any State, county, or municipal court in the county or city in which said association is located* having jurisdiction in similar cases." (Italics added.)

The United States Supreme Court "has had prior occasion to consider § 94. It is now settled that the statute's provision concerning venue in state courts, despite the presence of what might be regarded as permissive language, 'is not permissive, but mandatory, and, therefore, "that national banks may be sued only in those state courts in the county where the banks are located." ' [Citations.] The venue provision, however, has been held to be a privilege personal to the bank, and to be subject to waiver. [Citations.]" (*Citizens & Southern Nat. Bank* v. *Bougas,* 434 U.S. 35, 38 [54 L.Ed.2d 218, 222, 98 S.Ct. 88, 90].)

In support of Central Bank's motion, Bonnie M. Emert, a vice president and manager of its Coast Program division, declared:

"The principal office of the Bank is established at . . . Oakland, California . . . , pursuant to Charter No. 6919, issued by the Comptroller of the Currency of the United States, under his statutory authority to authorize the establishment and operation of national banks. The Coast Program Divisional Office is located at . . . Long Beach, California . . . , on the premises of the Long Beach Branch of said bank, pursuant to Branch Certificate No. 13789A issued by said Comptroller of the Currency.

"There is no branch of said Bank authorized, established, or located within the County of San Diego, or any city therein. The action herein does not affect, nor purport to affect, title to real property; nor does it arise out of, or in any way involve, the acceptance by the Bank of appointment as a fiduciary by this Honorable Court, or any other Court.

"The Bank has not consented to suit in this matter in the County of San Diego, nor has it consented generally to suit in said County."[1] This declaration is a prima facie demonstration of entitlement to transfer.

Bryant opposed Central Bank's motion on the asserted ground the bank had impliedly waived its rights under section 94 by conducting business in San Diego County. His theory, as revealed by the transcript of the motion hearing, was that Central Bank, through its agent, Laseter Insurance Agency, financed Bryant's insurance premium in that county and thereby consented to be sued there.

In support of his opposition, Bryant averred by counterdeclaration:

"1. On or about November 5, 1976, I entered into a written agreement wherein defendant COAST PROGRAM would pay defendant AMERICAN RESERVE's insurance premium from November 5, 1976 until November 5, 1977. I agreed to make monthly installment payments to defendant COAST PROGRAM. Said monthly installment payments were made through the LASETER INSURANCE AGENCY OF SAN DIEGO, CALIFORNIA. Attached are the receipts of said payments. Said receipts are marked as EXHIBIT 'A' and incorporated herein.

"2. I am now and at all times herein mentioned, was a resident of the COUNTY OF SAN DIEGO, STATE OF CALIFORNIA.

"3. It is my understanding that payments made through the LASETER INSURANCE AGENCY were forwarded directly to COAST PROGRAM, a division of CENTRAL BANK NATIONAL ASSOCIATION.

"4. I received the cancellation notice of the insurance policy which is the subject of the instant action directly from LASETER INSURANCE."

The trial court denied Central Bank's motion for reasons not entirely clear.[2] The bank then filed a timely, verified petition seeking a writ of mandate from this court (see Code Civ. Proc., § 400). Bryant filed no points and authorities in opposition (see Cal. Rules of Court, rule 56(b)).

---

[1] She attached to her declaration a copy of the premium financing agreement she believed to be described in the complaint. The copy is so poor as to be undecipherable.

[2] The superior court's tentative reaction to the matter was that there were "sufficient contacts in San Diego through the sale of the policy and the collection of premiums to justify this Court having proper jurisdiction and venue." The issue was never personal

On April 25, 1978 we issued an alternative writ of mandate requiring respondent court to:

"(a) vacate [its] order of February 23, 1978, and make a new order granting petitioner's motion for change of venue, upon the ground that real parties in interest failed to meet their burden (see *Buffum* v. *Chase Nat. Bank of City of New York* (7th Cir.) 192 F.2d 58, 61) of proving, by competent evidence, that petitioner impliedly waived its right to be sued in a county in which it is located (12 U.S.C. § 94; see *Central Bank* v. *Superior Court,* 30 Cal.App.3d 913) or

"(b) in the alternative, show cause before this court why a peremptory writ of mandate ordering [it] to do so should not issue."

An unverified answer to the petition was filed by Bryant's counsel. The answer admits all of the allegations of the petition except paragraphs 4 and 13 which state:

"4. Petitioner does not now have, and never has had, any branch office in the County of San Diego, State of California. Petitioner: does not now make, and never has made, loans in the County of San Diego; does not now accept, and never has accepted, deposits in the County of San Diego; and does not now pay, and never has paid, checks in the County of San Diego.

". . . . . . . . . . . . . . . . .

"13. Real Party in Interest Karen Laseter is not now, and never has been, authorized by Petitioner to accept payments of money on its behalf, or to receipt for the same in Petitioner's name, and was not authorized by Petitioner to accept any of the installment payments provided for in the contract referred to in paragraph 12 above on behalf of Petitioner." Those allegations were denied.

Central Bank has filed a replication to the answer raising the fact that the answer is unverified.

---

jurisdiction over the bank, but waiver of its right to be sued only where it is located. The insurance policy and premium financing agreement are separate transactions; sale of the policy is irrelevant to waiver. Monies paid to Laseter by Bryant are more properly characterized as loan installments than premiums.

The matter was taken under submission at the end of the hearing and later denied without further explanation.

Code of Civil Procedure section 1089 provides in part: "On the date for return of the alternative writ, or on which the application for the writ is noticed, or, if the Judicial Council shall adopt rules relating to the return and answer, then at the time provided by those rules, the party upon whom the writ or notice has been served may make a return by demurrer, *verified* answer or both." (Italics added.) Likewise, rule 56(c) of the California Rules of Court provides in part: "If the petition is granted, with or without prior service or opposition, and a writ or order to show cause issues, the respondent or real party in interest or both, separately or jointly, may make a return, by demurrer, *verified* answer or both." (Italics added; see also Cal. Civil Writs (Cont.Ed.Bar 1970) § 15.6, pp. 383-384.)

Here respondent and real party in interest have neither complied with the alternative writ by granting petitioner's motion for change of venue, nor made a return by demurrer or verified answer. Despite objection in petitioner's replication, real party in interest has failed to procure and submit verification of the answer.

The general rules of pleading and practice apply (Code Civ. Proc., § 1109). The return must conform to the rules governing an answer in a civil action (*Dulaney* v. *Municipal Court,* 11 Cal.3d 77, 81, fn. 3 [112 Cal.Rptr. 777, 520 P.2d 1]). In a civil action, "failure to verify the answer, where this is required, results in an admission of the allegations of the complaint" (3 Witkin Cal. Procedure (2d ed. 1971) Pleading, § 356, p. 2020; see *Hearst* v. *Hart,* 128 Cal. 327 [60 P. 846]). Thus, the unverified answer before us is ineffective in denying the allegations of the verified petition, and we deem those allegations, including paragraphs 4 and 13, to be true. The right to relief is clear, and a peremptory writ should issue.

Even assuming the return were sufficient, we hold, as a second basis for decision, the evidence before the trial court is insufficient to sustain a finding Central Bank impliedly waived its right to be sued only in a county where it is located. "Waiver is a voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed. 67 C.J. 289. It may be expressed formally or it may be implied as a necessary consequence of the waiver's conduct inconsistent with an assertion of retention of the right. It must be proved by the party relying upon it. And if the only proof of intention to waive rests on what a party does or forbears to do, his act or omissions to act should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a

particular right that no other reasonable explanation of his conduct is possible." (*Buffum* v. *Chase Nat. Bank of City of New York* (7th Cir. 1951) 192 F.2d 58, 60-61.) ▮▮ Thus, it was Bryant's burden to prove the implied waiver.

▮▮ ▮▮▮▮ We consider only Bryant's counterdeclaration under penalty of perjury, and not his unverified complaint,[3] in deciding whether an inference of waiver could be justified. Of course, Bryant's residence (allegation number 2) and the fact Laseter Insurance Agency sent notice of cancellation of the insurance policy (allegation number 4) are irrelevant to the issue of waiver.

The remainder of the declaration fails to allege where the premium financing agreement was entered into, the existence of any relationship between Laseter Insurance Agency and Central Bank, or any *act by Central Bank* reasonably implying it voluntarily relinquished its right to be sued only in a county where it is located.

Finally, even assuming Bryant had proved his theme that Central Bank, through its agent, Laseter Insurance Agency, financed his insurance premium in San Diego County, we express doubt that a waiver could be inferred as a matter of law[4] from those facts.

▮▮ Without wading deeply into the controversy over what actions may constitute a waiver of rights under section 94 (see e.g., Steinberg, *Waiver of Venue under the National Bank Act: Preferential Treatment for National Banks* (1976) 62 Iowa L.Rev. 129), we make the following observations. First, under federal decisional law, the use of an agent or wholly owned subsidiary by a national bank to conduct out-of-state business "indicates an intention to preserve, rather than waive" the bank's venue rights (*Fisher* v. *First National Bank of Omaha* (S.D. Iowa 1972) 338 F.Supp. 525, 531; see *Klein* v. *Bower* (2d Cir. 1970) 421 F.2d 338, 342). Such authority suggests the alleged but unproven use of Laseter

---

[3] Even though an unverified complaint may have some effect in supporting the chosen venue where the defendant's affidavit does not deny or otherwise meet the allegations in the complaint as they relate to venue (see *Quick* v. *Corsaro,* 180 Cal.App.2d 831, 835-836 [4 Cal.Rptr. 674]), where, as here, defendant's declaration shows entitlement to transfer, an unverified complaint is not the equivalent of a counteraffidavit (*id.,* p. 835; see 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, §§ 542, 544).

[4] "Waiver is ordinarily a question of fact." (*Lyons* v. *Brunswick-Balke etc. Co.,* 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173].)

Insurance Agency as an agent is not inconsistent with Central Bank's assertion of a right to transfer under section 94.

Second, the majority of courts, properly leaving to Congress the task of correcting perceived inequity in section 94, hold that minimal business transactions alone do not constitute waiver (see Steinberg, *op. cit. supra,* pp. 136-139, and cases there cited). If the rule were otherwise, the concept of waiver would be strained beyond recognition and section 94 would be practically nullified. In *Michigan Nat. Bank* v. *Superior Court,* 23 Cal.App.3d 1 [99 Cal.Rptr. 823], upon which Bryant places great reliance, the national bank not only conducted business in California, but also attempted by self-help to enforce its security interest in California, and the court's finding of waiver rests upon the combination of the bank's activities (*id.* p. 13; see *Central Bank* v. *Superior Court,* 30 Cal.App.3d 913, 918-919 [106 Cal.Rptr. 696]; *Reaves* v. *Bank of America* (S.D. Cal. 1973) 352 F.Supp. 745, 748-749).

Third, "[t]his is not . . . a situation in which the privilege sought to be asserted will compel suit in another state" (*Central Bank, supra,* p. 919) and "there is a vast difference between the quantum of activity needed to warrant a finding of waiver as to a national bank which has conducted activities away from its home state and a national bank which conducts business in different counties of the same state" (*id.*).

For all these reasons we conclude venue is not proper in San Diego County. The question remains where the action should be transferred, a question the trial court has not yet had the opportunity to consider. Nevertheless, in light of the failure of respondent and real parties in interest to comply with our alternative writ, we see little purpose in subjecting petitioner to further proceedings below, and we resolve to decide that question in this proceeding for the guidance of all concerned.

The purpose of section 94 is to avoid "untoward interruption of a national bank's business that might result from compelled production of bank records for distant litigation." (*Citizens & Southern Nat. Bank* v. *Bougas, supra,* 434 U.S. 35, 44 [54 L.Ed.2d 218, 226]; *First Nat. Bank* v. *Morgan,* 132 U.S. 141, 145 [33 L.Ed. 282, 284, 10 S.Ct. 37, 38-39].) Reexamining the statute in light of its purpose and modern branch banking procedures, the United States Supreme Court has concluded that state court venue of a transitory action against a national bank is not restricted to the county where it is "established," i.e., the county specified

in the bank's charter as the place where its operations are to be carried out, but extends to any other county in which the bank conducts general banking business at an authorized branch *(Citizens & Southern Nat. Bank v. Bougas, supra).*

■    From the record before us it is clear that Central Bank is "located" either in Alameda County, where it is established, or in Los Angeles County, where it maintains its Coast Program operating division and authorized Long Beach branch. Counsel for Central Bank has represented the bank records bearing on this litigation are located at the Coast Program Division Office in Long Beach. Furthermore, although Central Bank's written motion requests transfer of the action to Alameda County, counsel for the bank has conceded the bank is "located" in Los Angeles County and has repeatedly offered to stipulate to transfer to that county. We conclude the purpose of section 94 is respected and promoted by transfer of this case to Los Angeles County.

Let a peremptory writ of mandate issue compelling respondent court to grant petitioner's motion for change of venue with directions to transfer the action to Los Angeles County.

Cologne, J., and Staniforth, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied August 16, 1978.