[No. B064707. Second Dist., Div. Three. Aug. 20, 1992.]

LOS ANGELES CITY ETHICS COMMISSION et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; CHARLES FUENTES, Real Party in Interest.

## COUNSEL

Mitchell, Silberberg & Knupp, Edward M. Medvene, Peter B. Gelblum and Richard B. Sheldon for Petitioners.

No appearance for Respondent.

Iverson, Yoakum, Papiano & Hatch, Neil Papiano and Richard M. Moore for Real Party in Interest.

## OPINION

**CROSKEY, J.**—By this mandate proceeding we are asked to reverse an order by the superior court enjoining the Los Angeles City Ethics Commission (Commission) from participating or assisting in an on-going criminal investigation by the district attorney into certain activities of members of the office of the Los Angeles City Attorney. Our resolution of this case requires an examination of the ordinance, approved by the voters in 1990, which created the Commission and its authority. We will conclude that the acts of the Commission enjoined by the trial court were lawful and clearly authorized by the ordinance. We will therefore issue a writ of mandate.

The Commission, as petitioner,[1] seeks such extraordinary relief in an action commenced by the real party in interest, Charles Fuentes (Fuentes) who, as a target of the district attorney's investigation, sought to limit and restrain what he claims was the improper and unauthorized participation of the Commission. Fuentes is the chief administrative officer of the city attorney's office and also serves as vice-chairman of the State Democratic Party.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts before us are not in dispute, and we accept as true the matters set out in the Commission's petition.[2]

The Commission was created by the voters of the City of Los Angeles in the June 1990 election by their passage of Proposition H, which added article XXXVI to the city charter. The authority, powers and jurisdiction of the Commission are defined in that article and, specifically, sections 600-605

---

[1]In addition to the Commission, its individual members, Dennis Curtis, Cynthia Telles, Teresa Drury, Ed Guthman and William Mills and Commission consultant, David Alkire, also join as petitioners. However, for convenience, and because it does not impact the analysis or the outcome, we treat the Commission as the sole petitioner.

[2]There was a similar lack of dispute before the trial court. The Commission was the only party to present admissible evidence. Fuentes's motion papers consisted of a verified petition and an exhibit containing a number of newspaper articles. The trial court sustained the Commission's objections (1) to treating Fuentes's petition as evidence (the allegations were on information and belief or were patent hearsay), and (2) to the admission of several newspaper articles (they were all inadmissible hearsay). Thus, the only evidence before the trial court was that supplied by the Commission. It is that record which is before us.

In addition, Fuentes did not originally file a verified opposition to the Commission's petition before this court. The result of such a failure would mean that the Commission's allegations and statement of facts would be considered as undenied (*Central Bank* v. *Superior Court (Bryant)* (1978) 81 Cal.App.3d 592, 600 [146 Cal.Rptr. 503]) and thus would be deemed by us to be true. However, prior to oral argument, Fuentes filed a verification document, claiming the failure to include one with his brief was a matter of oversight.

thereof. The Commission is charged with administering and implementing state and local laws relating to campaign financing, lobbying, conflicts of interest and governmental ethics. (City charter, art. XXXVI, § 600, subd. J.)[3]

Among the specific duties and responsibilities assigned to the Commission are: (1) to "investigate alleged *violations of state law,* this Charter, and City ordinances *relating to* limitations on campaign contributions and expenditures, *governmental ethics and conflicts of interest* and *to report the findings* to the City Attorney *and other appropriate enforcement authorities*" (§ 600, subd. K(4), italics supplied); (2) to "provide assistance to agencies and public officials in administering the provisions of this Charter *and other laws* relating to campaign finance, conflicts of interest and governmental ethics" (§ 600, subd. (K)(5), italics supplied); and (3) to "maintain a whistle-blower hot line." (§ 600, subd. K(7).)[4]

Under a separate subdivision of its enabling legislation, the Commission is required to "conduct investigations . . . of (1) alleged violations *of this Charter and City ordinances* relating to campaign financing and lobbying and (2) alleged violations *of this Charter and City ordinances* relating to conflicts of interest and governmental ethics by . . . the City Attorney [and other elected or high-ranking City officers]." (§ 600, subd. (O).)[5] If the Commission determines, after a public hearing, that a violation of municipal laws has

---

[3]Unless otherwise indicated all section references are to article XXXVI of the Los Angeles City Charter.

Section 600, subdivision J, provides:

"The Commission shall have responsibility for the impartial and effective administration and implementation of the provisions of this Charter, statutes and ordinances *concerning campaign financing, lobbying, conflicts of interest and governmental ethics.*" (Italics added.)

[4]The full text of the relevant portions of section 600, subdivision K, provide:

"The City Ethics Commission shall have the following duties and responsibilities:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"4. To audit campaign statements and other relevant documents and investigate alleged violations of state law, this Charter and City ordinances relating to limitations on campaign contributions and expenditures, governmental ethics and conflicts of interest and to report the findings to the City Attorneys and other appropriate enforcement authorities. Audits shall be conducted of every candidate receiving public matching funds and may be conducted of other candidates and committees involved in City elections.

"5. To provide assistance to agencies and public officials in administering the provisions of this Charter and other laws relating to campaign finance, conflicts of interest and governmental ethics.

"6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"7. To maintain a whistle-blower hot line."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

[5]The Charter and Code of the City of Los Angeles contain legislation similar and complementary to state laws concerning campaign financing, conflicts of interest and government ethics. (See § 312; L.A. Mun. Code, § 49.5.1 et seq.)

occurred, it is empowered to issue cease and desist orders and orders to file any required documents, and to impose monetary penalties. (§ 600, subd. (O)(1)(c).) Violations of the municipal law within the Commission's mandate are punishable under the provisions of section 600, subdivision (O). (§ 600, subd. (O)(1)(d).) Violations of such laws by appointed officers and City employees are subject to penalties and sanctions, "as may be prescribed by ordinance," presumably including section 600, subdivision (O) itself. (§ 600, subd. (O)(2).)[6]

Ordinarily, the city attorney provides legal services to the Commission. However, if any matter directly involves the city attorney's office, the Commission is authorized to employ staff counsel "to give advice to the Commission and to take such action as the Commission may direct." (§ 600,

---

[6]In relevant part, section 600, subdivisions (O)(1) and (O) (2), provides:

"1. Conduct of Elected Officials. Members of certain Boards and Commissions. Candidates and Others.

"The Commission Shall conduct investigations in accordance with this subdivision of (1) alleged violations of this charter and City ordinances relating to campaign financing and lobbying and (2) alleged violations of this Charter and City ordinances relating to conflicts of interest and governmental ethics by the Mayor, the City Attorney, the Controller, members of the City Council and members of the City boards and commissions who serve as the heads of their respective departments or agencies, and by other persons other than in their capacities as officers and employees of the City.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Administrative Orders and Penalties.

"(i) When the Commission determines there is probable cause for believing a provision of this Charter or City ordinance has been violated, it my hold a public hearing to determine if such a violation has occurred. When the Commission determines on the basis of substantial evidence presented at the hearing that a violation has occurred, it shall issue an order which may require the violator to:

"a. Cease and desist the violation;

"b. File any reports, statements or other documents or information required by law; and/or

"c. Pay a monetary penalty to the General Fund of the City of up to five thousand dollars ($5,000) for each violation or three times the amount which the person failed to report properly or unlawfully contributed, expended, gave or received, whichever is greater.

"When the Commission determines that no violation has occurred, it shall publish a declaration so stating.

"(d) Any person who violates any provision of this Charter or of a City ordinance relating to campaign financing, lobbying, conflicts of interest or governmental ethics, or who causes any other person to violate any such provision, or who aids and abets any other person in such violation, shall be liable under the provisions of this section.

"2. Conduct of Appointed Officers and City Employees.

"The Commission shall conduct investigations of alleged violations of this Charter and City ordinances relating to conflicts of interest and governmental ethics by appointed officers and employees, and shall impose penalties and other sanctions for such violations, as may be prescribed by ordinance."

subd. (Q).)[7] Alternatively, if the city attorney himself or herself determines that the office has a possible conflict of interest requiring its disqualification in a particular matter, and a preliminary investigation by the Commission indicates a criminal action is warranted, the Commission may, by a four-fifths vote of its members, request the appointment of a special prosecutor. (§ 601.)[8]

On July 17, 1991, the Commission received a complaint through the hot line which stated that employees at the city attorney's office were being paid by the city for time which had been spent conducting political activities. ██ Believing this to be a matter within the concern of the Commission, but not having a sufficient staff to conduct a full investigation, Benjamin Bycel, the Commission's executive director, reported the matter to the district attorney on August 1, 1991 and asked him to conduct an investigation for potential criminal violations.[9] The district attorney agreed

---

[7]The full text of section 600, subdivision Q, states:

"The City Attorney shall provide legal services to the Commission. Notwithstanding Section 42 of the Charter, the Commission may employ or contract for staff counsel to give advice to the Commission and to take such action as the Commission may direct on matters which directly involve the conduct of the City Attorney, his or her office, or his or her election campaign."

[8]Section 601, subdivisions A and B, provide:

"A. Notwithstanding Charter Section 42, when the City Attorney determines that his or her office has a possible conflict of interest and that his or her office therefore should not investigate or prosecute alleged violations of this Charter, City ordinances or regulations, or statutes relating to campaign financing, lobbying, conflicts of interest or governmental ethics, the City Attorney shall so notify the City Ethics Commission, which by a four-fifths vote of all of its members may request the appointment of a special prosecutor to conduct the investigation. A special prosecutor shall not be appointed when it appears from a preliminary investigation that an alleged violation will warrant only an action for civil damages or administrative penalties.

"B. The request for the appointment of a special prosecutor shall be made to a standing committee composed of three retired judges selected by the Commission at the beginning of each odd-numbered year. The three judge panel shall name the special prosecutor, who upon such appointment shall have the authority to file and prosecute criminal and civil actions in the name of the People."

[9]Potential state law violations would presumably have included violations of the Political Reform Act of 1974 (Gov. Code § 81000 et seq., the PRA), as amended by the Campaign Contribution Limits Without Taxpayer Financing Amendments (§§ 85100-85307), approved by the electorate June 7, 1988 (Proposition 73). Specifically, potential offenses would have included the use of public money by a public officer for the purpose of influencing an election (Gov. Code, § 85300); violations of campaign contribution limitations (Gov. Code, §§ 85301-85302) and violation of campaign contribution and expenditure reporting requirements (Gov. Code, §§ 84200, 84211).

The payment by a state or local government agency of the salary or expenses of its employees is a political contribution or expenditure within the meaning of the PRA if the employee renders services for the purpose of influencing or attempting to influence the voters for or against the nomination or election of one or more candidates or the qualification or

to conduct such an investigation and to thereafter report from time to time on its progress. Investigator Dennis Stults (Stults) was assigned to the case.

As the investigation proceeded the Commission determined that it needed someone with criminal law expertise to advise it in the matter. Accordingly, on November 8, 1991, the Commission hired David Alkire (Alkire) as a consultant pursuant to the provisions of section 600, subdivision Q. (See fn. 7, *ante*.) Although Fuentes contends that Alkire was really selected as a "Special Prosecutor" under section 601 (see fn. 8, *ante*), the Commission denies that claim and the uncontradicted record supports such denial.[10]

Alkire, in his capacity as a consultant, acted as liaison between the district attorney and the Commission and monitored the progress of the investigation and conferred with Stults. In the process, he became quite familiar with the status and progress of the investigation. However, at all times, the investigation was conducted and controlled by the district attorney's office. For example, in December 1991, Stults obtained a search warrant for the city attorney's office. The warrant was based upon an affidavit prepared and signed by Stults, reviewed by Deputy District Attorney Richard Chrystie and presented by the two of them to a judicial officer.

On December 26, 1991, this warrant was executed at the city attorney's office by Stults, two special masters (Pen. Code, § 1524) and approximately 20 investigators from the district attorney's office. At the request of the district attorney's office, Alkire was present. He, however, did not conduct the search, but consulted with those who did with reference to what was

passage of any measure. (*League of Women Voters* v. *Countywide Crim. Justice Coordination Com.* (1988) 203 Cal.App.3d 529, 550 [250 Cal.Rptr. 161]; *Thirteen Committee* v. *Weinreb* (1985) 168 Cal.App.3d 528, 532-533 [214 Cal.Rptr. 297]; Cal. Code Regs., tit. 2, §§ 18215, 18225, 18420, 18423.) The reporting requirements apply to the payment of a public employee's salary or expenses for such services. (*Fair Political Practices Com.* v. *Suitt* (1979) 90 Cal.App.3d 125, 130 [153 Cal.Rptr. 311].)

Violations of sections 85300-85302 or any other statutory provisions in the same chapter of the code would, if proven, be punishable alternatively as felonies or misdemeanors. Violations of sections 84200 and 84211 or any other provision of the PRA, if proven, would be punishable as misdemeanors. (Gov. Code, § 91000.)

[10]Benjamin Bycel, the Commission's executive director, addressed this issue directly in his declaration which was filed with the trial court. He stated:

"At no time was Mr. Alkire hired or appointed as, or intended to be, a 'Special Prosecutor' for the Ethics Commission as provided in City Charter Section 601. The Commission did not follow any of the procedures for appointing a 'Special Prosecutor' because those procedures were not applicable to this investigation or Mr. Alkire; the Commission did not appoint, and never intended to appoint, a 'Special Prosecutor' in this matter. Mr. Alkire was hired solely as a consultant to the Ethics Commission, to be the Ethics Commission's liaison with the District Attorney's office in connection with the investigation of misconduct at the City Attorney's office, and to cooperate with the District Attorney in that investigation."

being sought by the warrant so as to minimize the intrusion into the city attorney's files.

In December 1991, the district attorney also decided to appoint Alkire a deputy district attorney (pursuant to Gov. Code, § 24101) for the special purpose of presenting to the grand jury evidence which had been developed during Stults's investigation. Alkire agreed to do this and in late December, the grand jury issued subpenas to approximately 20 witnesses, including Fuentes, to appear before it on January 8 and 9, 1992.

On January 7, 1992, Fuentes initiated this action by filing, ex parte, a petition for mandate/prohibition, alleging, without any admissible supporting evidence, that Alkire had been acting as a "Special Prosecutor" without being properly appointed and the Commission was conducting an unauthorized "investigation" of Fuentes which was beyond its authority and jurisdiction. Fuentes asked the trial court to issue a peremptory writ (1) to restrain the Commission, and its officers, agents and employees, from taking any further action or conducting any further proceedings against Fuentes, (2) to restrain Alkire from taking any further action in the matter or conducting any further investigation on behalf of the Commission or the grand jury, (3) to restrain the Commission from conducting any further investigation in this matter until the city council adopts and promulgates rules and regulations for conducting such investigations under section 600,[11] and (4) to restrain the district attorney from "loaning" any of his staff, investigators or attorneys to the Commission in connection with this investigation.

Following a hearing on this petition on January 7, 1992, which had been delivered to the Commission one hour before, the trial court issued an alternative writ which restrained the Commission and Alkire from taking any further action against Fuentes. No direct restraint order was made against the district attorney or the grand jury, but the practical effect of the order was to prevent the grand jury from hearing witnesses on the scheduled dates of January 8 and 9. A hearing date of January 24, 1992, was set on Fuentes's request for a peremptory writ.

As a further result of the court's order, the district attorney, on January 10, 1992, appointed two of his deputy district attorneys to take charge of the

---

[11]Under section 600, subdivision L(1), the Commission, not the city council, adopts the rules and regulations and there is no requirement that any rules or regulation in fact be adopted. Subdivision L(1) provides:

"The Commission *may* adopt, amend and rescind rules and regulations, subject to Council approval without modification, to carry out the purposes and provisions of this Charter and ordinances of the City relating to campaign finance, conflicts of interest and governmental ethics and to govern procedures of the Commission." (Italics added.)

investigation who, it was determined, would be responsible for making any presentation to the grand jury and, if indictments were later returned, for prosecuting the case in superior court. Alkire's appointment as a special deputy district attorney was terminated on January 24, 1992.

At the hearing on January 24, the trial court heard argument from counsel and took the matter under submission. On January 28, it issued its written memorandum of decision in which it sustained all of the Commission's objections to the petition and attached exhibits filed by Fuentes. This left the declarations submitted by the Commission as the only relevant evidence before the court. (See fn. 2, *ante.*) Nonetheless, the court found it would be just and reasonable to prohibit the Commission "from having anything to do with facilitating the District Attorney's ongoing felony investigation," except to allow the district attorney to interview Commission members as percipient witnesses.

The court found as matters of law that: (1) the appointment of Alkire as a special deputy district attorney was "legally questionable"; (2) the extent of the Commission's authority, and that of Alkire acting as its agent, was to investigate and enforce provisions of the city's charter and ordinances under section 600, subdivision (O); (3) the extent of Alkire's authority as a consultant employed under section 600, subdivision (Q) was to advise the Commission and take such action, not including the investigation or prosecution of felonies, as the Commission might direct; (4) the only procedural rubric under which Alkire could "investigate or prosecute" was as a special prosecutor appointed under section 601.

As matters of fact, the court found that: (1) when Alkire became both a consultant for the Commission and a special deputy district attorney, he was for all practical purposes doing what a section 601 special prosecutor would do, but without following procedures that are required by section 600, subdivision (O); (2) as a result, Fuentes was deprived of procedural due process by being required "to face [the Commission] on two levels—the commission level, acting under the Charter investigating misdemeanors, and under the District Attorney's mantle investigating felonies."

Based upon the foregoing findings, the court issued a peremptory writ of prohibition and "permanent injunction" which prohibited and enjoined the Commission and Alkire "from formally, or informally, participating in, assisting, aiding, or in any way directing, the current District Attorney

investigation of [Fuentes's] actions as an employee of the Los Angeles City Attorney's Office."[12]

The court's decision was converted into a judgment for "Peremptory Writ of Prohibition and Permanent Injunction" on February 13, 1992. The Commission has timely sought our review of the trial court's action by both writ and appeal.[13] On February 26, 1992, we issued an order to show cause and set the matter for hearing.

## CONTENTIONS

The Commission argues first that we should consider this matter as a writ due to the extraordinary circumstances and then essentially asserts five contentions.

(1) The trial court lacked jurisdiction to issue a writ of prohibition because prohibition issues only to "arrest the proceedings of any tribunal . . . exercising judicial functions."

(2) The trial court lacked jurisdiction to issue a permanent injunction because Code of Civil Procedure section 526 prohibits a court from enjoining public officers from performing official acts they are required by law to perform.

(3) The issues raised were moot when the judgment was entered because Alkire never fulfilled his limited appointment as a deputy district attorney to present evidence to the grand jury.

(4) Proposition H gave the Commission the power to investigate misconduct of public officials independently of the special prosecutor provisions. Therefore, the trial court erred in deciding the Commission could investigate allegations of misconduct only by appointing a special prosecutor.

(5) The trial court erred in finding the Commission had power only to pursue administrative proceedings leading to small fines and could not investigate felonies.

The first two are procedural questions and the other three go to the substantive claim made by Fuentes. Because their resolution is dispositive

---

[12]The decision also provides that, "this judgment does not prohibit [the Commission, its members or Alkire], or any of them, from providing direct knowledge or information to the District Attorney or Grand Jury, insofar as they and each of them are percipient to such knowledge; that is, each of them is permitted to be either a potential or actual witness or informant."

[13]As we explain below, this is a proper case for review by writ so the appeal taken by the Commission should be moot.

we will deal with the substantive issues. In view of our resolution of those questions, it will not be necessary for us to address the Commission's two procedural arguments.

## DISCUSSION

### 1. *Review by Extraordinary Writ Is Proper*

■ Where the issue is of sufficient importance or prompt resolution is necessary to protect the public interest, a writ may be issued even though an appeal is available. Examples of appellate review on petition for extraordinary writ include writ prohibition where the superior court attempted, in excess of its jurisdiction, to enjoin submission of a city charter to the Legislature (*Santa Clara County* v. *Superior Court* (1949) 33 Cal.2d 552, 553-554 [203 P.2d 1]), enforcement of statute (*State Bd. of Equalization* v. *Superior Court* (1935) 5 Cal.App.2d 374, 378-379 [42 P.2d 1076]), and construction of city charter provisions (*Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 7-8 [309 P.2d 481]). Where the issues raised are substantial, the matter is one of widespread interest, and the issue is one which should speedily be resolved, appellate courts have discretion to review the issue immediately on petition for extraordinary writ.

The instant petition raises issues which necessarily need to be quickly resolved and involve matters of widespread interest. Speedy determination of the powers of the Commission is in the public interest. The facts are undisputed and the issues raised are issues of law. The criteria for review by means of petition for extraordinary writ are thus satisfied.

### 2. *The Commission Had Authority Under Section 600, Subdivisions (K)(4) and (K)(5) to Investigate Violations of State Law Relating to Campaign Financing and Governmental Ethics, to Report the Results of Any Such Investigation to the District Attorney, and to Assist the District Attorney in Any Further Investigation*

On appeal, as in the trial court, Fuentes insists that (1) Alkire was acting as a "Special Prosecutor," but without the sanction of the appointment and procedural requirements set out in the charter, (2) the Commission was attempting to unilaterally enlarge its own jurisdiction by having Alkire appointed as a special district attorney, (3) the Commission is in fact conducting a felony investigation which is beyond its authority and (4) the alleged acts of misconduct do not even come with the Commission's area of interest and authority (i.e., campaign financing, lobbying, conflicts of interest or governmental ethics).

These contentions find no support either in the record or in the law. Indeed, it is not a very close question. There is no evidence at all to support Fuentes's charges as to either the action or the motivations of the Commission. Moreover, under the applicable statutory provisions and principles of law, all of the Commission's actions were well within its jurisdiction, thus there was no need to "enlarge" it to encompass them. Perhaps the quality of the arguments Fuentes advances concerning the Commission's jurisdiction is best illustrated by his contention that charges of engaging in partisan political activities while on city time (as the chief administrative officer for the city attorney) do not implicate problems of conflict of interest, governmental ethics or campaign financing.[14] To say that such an argument insults our intelligence is to understate our reaction.

■ Because charges that Fuentes was engaging in partisan political activities while on city time gave rise to a reasonable suspicion that activities within the Commission's charge were transpiring, the Commission acted properly in initiating and furthering an investigation of such activities. The established and undisputed facts are simple and straightforward.

The Commission received information on a whistleblower hot line which it is required under the ordinance to maintain. (§ 600, subd. K(7).) Upon learning of conduct that potentially violated both City and state laws, the Commission was not obligated to proceed under charter section 600, subdivision (O), applicable to violations of the city charter and ordinances, but could also proceed under section 600, subdivisions (K)(4) and (K)(5), which apply to violations of *state law* and "other laws" as well as city ordinances. Subdivision (K)(4) *expressly authorizes* the Commission to "investigate alleged violations of state law . . . relating to . . . governmental ethics and conflicts of interest . . . and to report the findings to . . . other appropriate enforcement authorities." Upon receipt of the information that employees of the city attorney were engaged in political activities on city time, the Commission was thus empowered to conduct an investigation. However, as a result of small staff capacity, it could not do so and therefore referred the matter to the district attorney.

Obviously, the matter could not be referred to the city attorney. In this circumstance, the Commission could seek the appointment of a "Special

---

[14]For example, Fuentes argues that if he is guilty of anything, it is theft (Pen. Code, §§ 484-487), a matter which he insists is of no concern to the Commission. Even if it were true that theft is the only crime which his activities potentially constituted, which it is *not* (see fn. 9, *ante*), it would not necessarily follow that matters within the Commission's charge were not implicated. Nothing in the charter provisions establishing the Commission suggests it is authorized to investigate violations only of laws that were enacted specifically to control political activity. A theft, or any crime, that is committed by an agent of the government for political purposes is a violation of the law, "relating to . . . governmental ethics," at the very least.

Prosecutor" under section 601 to investigate and prosecute potential misdemeanors, *but this was not required*. Inasmuch as potential felonies were alleged, no reason existed why the matter could not simply be referred to the district attorney under the Commission's mandate to "report . . . findings to . . . appropriate enforcement authorities." This was done on August 1, 1991.

■ Had the Commission done nothing else, this case clearly would not be before us. However, in order to provide assistance to the district attorney as required by section 600, subdivision (K)(5), act as a liaison to the district attorney's office, and monitor the progress of the district attorney's investigation, the Commission retained Alkire as a consultant in November 1991. The establishment of such a liaison capacity appears to have been both a rational and a reasonable decision and, again, it was expressly authorized by the charter where the matter with which the Commission was concerned involved the city attorney's office. (§ 600, subd. Q.)[15]

The appointment of Alkire did not constitute a "backdoor" appointment of a special prosecutor. Section 600, subdivision (Q) authorizes the Commission to employ consultants in matters directly involving the city attorney's office. A consultant so employed is authorized to advise the Commission and "take such action as the Commission may direct. . . ." Contrary to the conclusion of the trial court, actions which may be taken by a section 600, subdivision (Q) consultant certainly include assisting an investigation by the district attorney's office of alleged misconduct in the office of the city attorney. Nothing in the charter provisions governing the Commission suggests that a consultant employed under section 600, subdivision (Q) should not be able to do anything the Commission itself is empowered to do, and the Commission is specifically empowered and given the responsibility to "provide assistance to agencies and public officials [including the district attorney] in administering . . . other laws [including state laws] relating to campaign finance, conflicts of interest and governmental ethics." (§ 600, subd. (K)(5).)

After the Commission learned of allegations of improper activities by Fuentes in the city attorney's office and forwarded all of its information relating to the allegations to the district attorney's office, everything which was done in this matter was done by the district attorney, and under the

---

[15]Apart from the Commission's mandate to assist the district attorney in investigations involving political and governmental misconduct amounting to a felony, there was a reasonable need for the Commission to monitor the district attorney's investigation to protect its own ability to later seek appointment of a special prosecutor under section 601 for the prosecution of misdemeanors or to initiate administrative proceedings under section 600, subdivision (O), in the event the district attorney's office determined no conduct had occurred which could or should be prosecuted as a felony.

direction, supervision and control of the district attorney, not the Commission. It was the district attorney's office which (1) sought and executed a search warrant of the city attorney's office, (2) decided to appoint Alkire as a special deputy district attorney, and (3) initiated an investigation by the grand jury and caused it to issue subpenas to a number of witnesses, including Fuentes. The Commission itself was conducting no investigation, but it had a right to monitor the progress of the efforts of the district attorney and it had a responsibility under section 600, subdivision (K)(5) to provide assistance to the district attorney's investigators.

■ Fuentes argues, however, that the Commission's participation in the district attorney's investigation constituted an improper intrusion into the district attorney's sphere of action, in violation of state law. It did not. The investigation and prosecution of public offenses is, of course, the responsibility and prerogative of the Attorney General and the several district attorneys (Cal. Const., art. V, § 13; Gov. Code, § 26500), and no one may intrude upon these activities without the concurrence, approval, or authorization of such officers. (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 451 [279 Cal.Rptr. 834, 807 P.2d 1063]; *People* ex rel. *Kottmeier* v. *Municipal Court* (1990) 220 Cal.App.3d 602, 609 [269 Cal.Rptr. 542]; *People* v. *Shults* (1978) 87 Cal.App.3d 101, 106 [150 Cal.Rptr. 747]; *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 240-241 [138 Cal.Rptr. 101].) However, it is manifest from the record before us that the Commission's participation in the district attorney's investigation of Fuentes was with the full concurrence, approval and authorization of the district attorney. It was, of course, entirely within the district attorney's discretion to enlist the Commission's assistance in the investigation. (Gov. Code, § 29601; *Cunning* v. *County of Humboldt* (1928) 204 Cal. 31, 34-35 [266 P. 522].)

The record in this case does not support the conclusion that the Commission's consultant, Alkire, was acting as a "Special Prosecutor" without compliance with procedures set out in the charter, or the conclusion that the Commission, in an effort to enlarge its jurisdiction, contrived to have Alkire appointed as a special district attorney and, through him, conducted a felony investigation which was beyond its authority. The alleged acts of misconduct by Fuentes involved campaign financing, lobbying, conflicts of interest and governmental ethics. Further, the acts potentially constituted felonies. It was thus entirely appropriate for the Commission first to refer the matter to the district attorney's office as required by charter section 600, subdivision (K)(4), and thereafter, as required by section 600, subdivision (K)(5), to provide assistance to the district attorney's office. The Commission proceeded in every way in accordance with state law and with its express mandate under the city charter.

### 3. *Fuentes Was Not Deprived of Due Process of Law*

■ We note that the trial court found Alkire's appointment as a deputy district attorney to be "legally questionable." Perhaps this was because of his contemporaneous appointment as a consultant to the Commission. The appointment as a deputy district attorney appears to have been an action taken as a convenient, and perhaps economical, expedient as Alkire was the person in the best position to present evidence to the grand jury. However, since that appointment was withdrawn prior to the court's decision, the issue should now be moot. The district attorney has appointed a permanent replacement and has expressed no intention of considering a future reappointment of Alkire. Nonetheless, it is this appointment upon which the trial court relied for much of the due process concerns expressed in its decision.

It is *only* because of Alkire's dual role that there was any basis at all for Fuentes's argument that the Commission was proceeding with an investigation which was not authorized by Proposition H or, if authorized, was going forward without the due process protections to which Fuentes was entitled. As the trial court put it, "This uncertainty as to what Alkire was being utilized for by the District Attorney's Office is procedurally prejudicial insofar as [Fuentes] is concerned. Presumably, when Alkire was folded into the District Attorney's operation to present evidence to the Grand Jury [] he would be presenting felony evidence, because that's what the District Attorney's investigation entails. If so, where has [Fuentes's] procedural protection gone insofar as [the Commission's] actions are concerned? They have been subsumed by the District Attorney's investigation. It is grossly unfair to [Fuentes] to have to face [the Commission] on two levels—the commission level acting under the Charter investigating misdemeanors, and under the District Attorney's mantel [*sic*] investigating felonies. Procedural due process in this scenario is so muddled as to be non-existent. [Fuentes] is entitled to face the charges, whatever they may be, head on with knowledge of from where they come, and how he can defend himself."

This comment by the trial court (and one other[16]) appears to capture the error of the fundamental assumption on which the entire decision is based.

---

[16]In its decision the trial court made another statement which appears to underscore its reliance on a factual conclusion which finds no support in the record.

"The procedure is being used as a facade, it is not being used for its intended purpose, it presents a disjointed, mixed-up investigation that leaves all concerned prejudicially confused as to who is investigating what and for what purpose, *i.e.*, is the Commission investigating a felony for possible indictment, or is it investigating violations of the Charter and ordinances for possible Commission sanctions? The difference between the two scenarios is extremely significant. Under one scenario [Fuentes] faces a cease and desist order and monetary penalty and in the other he faces indictment with a possible felony charge. Although there is nothing

That is, that the Commission was in fact conducting, or even attempting to conduct, its own investigation.[17] It was no . There is no evidence whatever in this record to suggest that the Commission was proceeding or preparing to proceed with any administrative investigation whatever. There were no charges made or filed by the Commission against Fuentes or any other person nor, as far as we can determine, does the Commission have any present plans to do so.

We are thus left with a trial court decision which appears to be based not on evidence, but entirely upon the creative arguments of Fuentes's counsel. The trial court itself noted that no evidence before it indicated the Commission was contemplating administrative proceedings against Fuentes. However, the court was persuaded that the Commission's "very existence and authority culminates in this 'judicial function.' " Again, it is not the case that the Commission's sole function relating to the enforcement of campaign financing, conflict of interest, and governmental ethics laws is the conduct of administrative proceedings under charter section 600, subdivision (O). Rather, the Commission has the complementary responsibility of assisting other agencies in the enforcement of state laws and other laws directed toward the same goal of assuring honesty and fairness in government and in the conduct of elections. That Fuentes faced, and still may face, potential civil and administrative penalties for the same conduct under investigation as a crime by the district attorney does not constitute a denial of due process.

## CONCLUSION

In short, we find no basis for Fuentes's claim to protection from some sort of governmental double whammy. He is the target of a district attorney and grand jury investigation into possible felonious activity, and nothing more at present. This investigation resulted from information acquired and supplied by the Commission in a manner expressly contemplated by Proposition H.

---

wrong with both scenarios being played out, they have to be played out by the established procedures. Otherwise, the Commission is allowed to simply serve as a surrogate District Attorney with questionable authority, and the one who is being investigated, is left with the question of how to face the Commission's investigator (Alkire)—should he fully cooperate and accede to the cease and desist order and/or monetary penalty?; or, since a felony prosecution looms, should he seek more protective assistance to fully evaluate all of his defenses and require a full articulation of proof of guilt? [Fuentes] here is unable to make that choice and consequently is being denied his procedural due process rights."

[17]Fuentes confirms in his brief before this court that his case essentially rests upon the same proposition. He states, "[I]t was the Commission's action of investigating this case with its own 'special prosecutor' and only with the assistance of the District Attorney's office that was the gravamen of the excess of jurisdiction that precipitated [his] Petition below and the [trial] court's issuance of the Peremptory Writ and Injunction."

Fuentes is not being investigated by the Commission.[18] The problem, if any, of Alkire's so-called dual involvement was rendered moot *prior* to the trial court's order. Thus, there was no factual or legal basis for the writ and injunctive relief granted by the trial court.

### DISPOSITION

The order to show cause is discharged. A peremptory writ shall issue directing the trial court to vacate its order of January 28, 1992, and to enter judgment in favor of the Commission[19] on Fuentes's petition.

Klein, P. J., and Hinz, J., concurred.

---

[18]As the trial court noted, there is no reason why such an investigation could not be pursued. The fact is, however, the Commission has not as yet chosen to do so. Either administrative proceedings or a misdemeanor prosecution may be filed at any time within four years of the alleged misconduct. (L.A. Mun. Code, § 49.5.19.)

[19]Such writ relief shall apply with equal force in favor of the other petitioners (see fn. 1, *ante*).