Filed 4/11/22  In re M.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re M.D. et al., Minors.

V.A.,

      Petitioner and Respondent,

v.

M.D.,

      Objector and Appellant.

E077523

(Super.Ct.No. FFCSS1900034)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Aruna P. Rodrigo, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Offices of Zulu Ali and Associates and Zulu A. Ali for Objector and Appellant.

The Haynes Law Firm and Crista Haynes for Petitioner and Respondent.

Objector and appellant M.D. appeals a judgment terminating his parental rights to his children on the basis of abandonment under Family Code[1] section 7822. Father contends the evidence was insufficient to establish that he intended to abandon the children. We affirm the judgment.

## STATEMENT OF THE CASE

Father and T.O. (Mother) are the parents of M.D., Jr., (a boy, born November 2012; hereafter M.D.) and D.D. (a boy, born June 2014; collectively, the children).

On September 13, 2019, petitioner and respondent V.A. (Stepfather) petitioned to terminate Father's parental rights as to the children. On September 16, 2019, the trial court filed a "Citation—Freedom From Parental Custody and Control" for each child, notifying Father to appear before the court on September 20, 2019, for a hearing to terminate Father's parental rights.

On September 20, 2019, the court continued the hearing to November 8, 2019. The hearing continued again to February 21, 2020.

At the hearing on February 21, 2020, the court found the allegations "sufficient and true" and granted Stepfather's petitions to terminate Father's parental rights as to the children.

On March 16, 2020, Father filed a motion to set aside the judgment. A hearing was scheduled for April 24, 2020. The hearing on Father's motion was continued to June 26, 2020.

---

[1] All further statutory references are to the Family Code unless specified.

On June 19, 2020, Stepfather filed an opposition to Father's motion to set aside the judgment.

At the hearing on Father's motion on June 26, 2020, after hearing Father's testimony and argument by counsel for both parties, the trial court took the matter under submission.

On June 30, 2020, the trial court set aside the order granting Stepfather's petitions to terminate Father's parental rights to the children based on improper notice.

On August 28, 2020, a proof of service declaring that Father was served with Stepfather's petitions to terminate the parental rights of Father as to the children was filed. On September 11, Father filed answers to Stepfather's petitions and requested an evidentiary hearing.

On May 25, 2021, the trial court held a hearing on Stepfather's petitions. Mother, Father and Stepfather testified.

On July 6, 2021, the trial court granted Stepfather's petitions to free the children from Father's custody and control; a statement of decision was filed the same date.

On August 4, 2021, Father filed his notice of appeal.

## DISCUSSION

Father contends that the trial court erred in granting Stepfather's petition to free the children from the custody and control of Father. For the reasons set forth *post*, we find the trial court properly granted Stepfather's petition and affirm the court's order.

Under section 7822, a proceeding may be commenced to have a child under the age of 18 years old declared free from the custody and control of one parent if the child

3

has been left "in the care and custody of the other parent for a period of one year without any provision for the child's support or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).)

" ' " 'In order to constitute abandonment there must be *an actual desertion*, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same.' " [Citations.]' [Citation.] Accordingly, the statute contemplates that abandonment is established only when there is a physical act—leaving the child for the prescribed period of time—combined with an intent to abandon, which may be presumed from a lack of communication or support." (*In re Jacklyn F.* (2003) 114 Cal.App.4th 747, 754; § 7822, subd. (b) ["failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon"].) To overcome the statutory presumption, the parent must make more than token efforts to support or communicate with the child. (§ 7822, subd. (b) ["If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent"]; *In re B.J.B.* (1986) 185 Cal.App.3d 1201, 1212.) Intent to abandon may be found on the basis of an objective measurement of conduct, as opposed to stated desire. (*Id.* at p. 1212.) "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 68.)

4

In this case, on July 6, 2021, in its statement of decision after a hearing on Stepfather's petition for freedom from parental control and custody, the trial court made the following findings:

Mother and Father are the biological parents of the children. Mother and Stepfather are married. When Mother and Father separated in early 2016, they informally agreed for Father to visit the children on alternating weekends. Since that time, Father's visits with the children were inconsistent. Mother made efforts to contact Father and "even offered to drop the children off at [paternal grandfather's] home. Beginning early 2018 [Father's] visits were less frequent and by [Father's] own admission he stopped seeing the children in late 2018."

In mid-2019, Father started to demand regular visits with the children and became aggressive in his text messages to Mother. Mother admitted to blocking Father on her phone about June of 2019.

The court found that Father was less credible when he testified that "he was prevented by [Mother] from visiting, supporting and communicating with the children and that he was unaware of the children's whereabouts until the current petition was filed. It was undisputed that [Father's] step-mother, [C.D.], and [Mother have] a positive relationship and [C.D.] regularly visits with the children twice a month. No evidence was presented that [Father] visited the children nor communicated with them while they were visiting with [C.D.]. It was further undisputed that [Mother] communicates with [Father's] current spouse . . . and paternal aunt(s)."

5

The court found Mother's testimony to be credible that Father was aware of the children's residence in the City of Ontario since September 2018, and that Mother and children have remained there since that time. The court found that Father "did not make any meaningful efforts to communicate with the children since early 2019."

Moreover, the trial court found that although Father agreed to provide $200 every month to Mother for the care of the children, he made no payments after November of 2017. After then, Father did not provide any support—monetary, food, clothing, medical—for the children.

Therefore, under section 7822, the court found "by clear and convincing evidence that [Father] has not only left [the children] in the care and custody of [Mother] for a period of in excess of one year without any provision for their support, but also failed to communicate, with the intent to abandon the children."

The court went on to note that Father did not overcome the presumption under section 7822, subdivision (b), "that his failure to provide support and failure to communicate is presumptive evidence of his intent to abandon the children. The court is not persuaded nor find[s] it relevant that [Father] did not intend to abandon the children forever." Furthermore, the court found that Father's "efforts to communicate by send text messages to [Mother] (even if determined to be credible) to be only token efforts to communicate with the children."

Thereafter, the trial court ordered the children to be free from the custody and control of Father and granted the section 7822 petition.

6

On appeal, Father contends that the "trial court's decision granting the petition to Free Minor From Custody and Control on the basis of intent to abandon must be reversed because it is not supported by substantial evidence in the record." We disagree.

We apply a substantial evidence standard of review to a trial court's finding under section 7822. (*In re Amy A.*, *supra*, 132 Cal.App.4th at p. 67.) In *Conservatorship of O.B.* (2020) 9 Cal.5th 989, our Supreme Court held an appellate court applying the substantial evidence standard of review must account for the standard of proof required in the underlying proceeding when determining whether a finding is supported by the evidence. (*Id.* at pp. 995-996.) Thus, "[w]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Id.* at p. 1011.) We do not consider the credibility of the witnesses nor reweigh the evidence. (*Id.* at p. 1008; *In re Lana S.* (2012) 207 Cal.App.4th 94, 103 (*Lana S.*).) We must affirm an order that is supported by substantial evidence even if other evidence, or other inferences from the evidence, would have supported a contrary finding. (*In re Manuel G.* (1997) 16 Cal.4th 805, 823.) All evidence most favorable to the respondent must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. (*In re Gano* (1958) 160 Cal.App.2d 700, 705.)

"Abandonment and intent ' "are questions of fact for the trial [court]. . . . [Its] decision, when supported by substantial evidence, is binding upon the reviewing court. An appellate court is not empowered to disturb a decree adjudging that a minor is an

abandoned child if the evidence is legally sufficient to support the finding of fact as to the abandonment [citations]." ' [Citation.] 'The appellant has the burden of showing the finding or order is not supported by substantial evidence.' " (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1011; *In re Lana S.*, *supra*, 207 Cal.App.4th at p. 103 [on appeal, the parent challenging the juvenile court's order has the burden to show there is insufficient evidence to support the court's decision]).

The first element of section 7822 required evidence that Father left the children in another person's care and custody for a period of one year. (§ 7822, subd. (a)(3).) Here, there is no dispute that the children had been residing with mother for a period in excess of one year. There is also no question that there is substantial evidence to support the finding of the second element, that Father failed to provide for the children for a period of at least one year. In fact, Father failed to provide any financial support for the children since November of 2017. Moreover, there is substantial evidence, based on the trial court's credibility determination of the parties' testimony, that Father failed to communicate with the children for one year. The statute does not require that the parent fail to do both, which occurred here. (See *Piscioneri v. City of Ontario* (2002) 95 Cal.App.4th 1037, 1044 [use of the word "or" in a statute indicates intention to use it disjunctively so as to designate alternative or separate categories].) In considering whether a parent has failed to communicate with a child, the trial court may consider the frequency with which the parent tried to communicate with the child, the genuineness of the effort under all the circumstances, and the quality of the communication that occurred. (*In re B.J.B.*, *supra*, 185 Cal.App.3d at p. 1212; *People v. Ryan* (1999) 76

8

Cal.App.4th 1304, 1316.)  Here, Father failed to communicate with the children since early 2019.  Although Father claims he was blocked from communicating with the children in mid-2019, the court found Father's testimony to not be credible.  Furthermore, the court noted that Father's step-mother, C.D., and his current wife both communicated with Mother; C.D. even visited with the children.  Father, however, failed to communicate with the children since early 2019.  Testimony from a single witness is sufficient to support a true finding.  (*People v. Boyer* (2006) 38 Cal.4th 412, 480; *People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1356.)

We next consider whether the evidence supports the trial court's finding that Father had an intent to abandon the children.  While a parent's failure to contribute to a child's support absent demand does not necessarily show abandonment, "such failure coupled with failure to communicate, may do so."  (*In re Randi D.* (1989) 209 Cal.App.3d 624, 630.)  Even if Father anticipated resuming contact with the children at some future point, "a child's need for a permanent and stable home cannot be postponed for an indefinite period merely because the absent parent may envision renewing contact with the child sometime in the distant future.  (Cf. *In re Christina A.* (1989) 213 Cal.App.3d 1073, 1080; *In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038 ['The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it']; see also *In re Rikki D.* (*1*991) 227 Cal.App.3d 1624, 1632, [disapproved on other grounds in *In re Jesusa V.* (20024) 32 Cal.4th 588, 624, fn. 12] ['Children should not be required to wait until their parents grow up.'].)"  (*In re Daniel*

9

*M.* (1993) 16 Cal.App.4th 878, 884; see also *Allison C.*, *supra*, 164 Cal.App.4th at p. 1016.)

"Simply stated, a child cannot be abandoned and then put 'on hold' for a parent's whim to reunite. Children continue to develop, and the Legislature has appropriately determined a child needs a secure and stable home for that development." (*Daniel M.*, *supra*, 16 Cal.App.4th at p. 885.) "[W]e conclude that [the statute's] phrase 'intent . . . to abandon the child' does not require an intent to abandon permanently. Rather, an intent to abandon for the statutory period is sufficient." (*Ibid*.) "[T]he Legislature has determined that the state's interest in the welfare of children justifies the termination of parental rights when a parent fails to communicate with his or her child for at least one year with the intent to abandon the child during that period, even though the parent desires to eventually reestablish the parent-child relationship." (*Id.* at p. 884.)

During oral argument, Father's counsel referred to, *In re Aubrey T.* (2020) 48 Cal.App.5th 316 (*Aubrey T.*), to support Father's case. Counsel argued that due to the restrictions placed on Father, the presumption of abandonment was rebutted, as the appellate court found in *Aubrey T.* Father's reliance on *Aubrey T.* is misplaced.

In *Aubrey T.*, the appellate court reversed the lower court's termination of the father's parental rights over the child. In reaching this decision, the court noted that the juvenile court relied on the father's limited visitations with his daughter from November 2014 and November 2015, and found "that he failed to overcome the presumption that he intended to abandon his child." (*Aubrey T.*, *supra*, 48 Cal.App.5th at p. 330.) The appellate court, however, found that the father "rebutted that presumption with his

10

testimony and documentary evidence showing that he visited [the child] when permitted by [the mother]. Additionally, the number and length of [the father's] visits with the child told only a part of the story. The undisputed evidence at the hearing demonstrated that [the father] repeatedly made efforts to communicate with [the child] during this time period, that he had a legitimate reason for trying to establish such contact through [the mother] rather than [the grandparents], and that [the mother] feared she would lose the support of her family if she allowed [the father] to have a relationship with his child. Based on the totality of this record, the evidence did not support the juvenile court's finding that [the father's] efforts to have contact with [the child] were mere token communications that did not overcome the statutory presumption." (*Aubrey T.*, *supra*, 48 Cal.App.5th at p. 330.)

The facts in this case are distinguishable from the facts in *Aubrey T.* Here, as provided in detail *ante*, Father failed to communicate with his children since early 2019. Although Father claimed that he was blocked from Mother's phone, not only did the court find his testimony not to be credible, but the court also noted that both C.D., and Father's current wife communicated with Mother. Hence, had Father wanted to communicate with Mother or the children, he could have asked for assistance from C.D. or his current wife. There is no evidence indicating that Father pursued those methods to contact his children. Hence, unlike the father in *Aubrey T.*, there is no evidence that Father repeatedly made efforts to make contact with the children. The case, therefore, is inapplicable.

Here, viewing the evidence in the light most favorable to the trial court's judgment, as we must, we conclude substantial evidence supports the finding that the requirements of section 7822 were met.

## DISPOSITION

The trial court's order granting the Petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

12